ROBERT L. THOMAS, ADMINISTRATOR OF THE ESTATE OF JOYCE THOMAS, DECEASED v. ERNEST EDWARD POOLE, JR., DWIGHT M. DUNLAP, AND GUY R. RANKIN, INDIVIDUALLY AND GUY R. RANKIN SECURITY SERVICE CORPORATION, TRADING AS VANGUARD SECURITY SERVICE

No. 7914SC451

(Filed 19 February 1980)

1. **Master and Servant § 35.2— shooting by security guard—application of respondeat superior—jury question**

In an action to recover from defendant corporation for the wrongful death of plaintiff's intestate which occurred when an armed security guard employed by defendant was leaving his duty station at the end of his shift, the trial court erred in determining that there was no genuine issue of material fact relating to the doctrine of *respondeat superior* and in entering summary judgment for defendant corporation, since the jury could find that defendant security guard engaged in "horseplay" in that, thinking his gun was empty, he pointed it at plaintiff's intestate and intentionally pulled the trigger after she

Thomas v. Poole

grabbed and held his sleeve, thereby deviating from the scope of his employment and absolving defendant corporation from liability under the doctrine of respondeat superior; or on the other hand the jury could find that the security guard was not engaged in horseplay but negligently failed to remove all cartridges from the gun and, thinking it was empty, negligently handled the gun causing it to discharge and strike plaintiff's intestate, thus raising a question for the jury as to whether the security guard was acting within the course and scope of his employment.

**2. Corporations § 15— shooting by security guard—president of corporation insulated by corporate entity**

In an action to recover for the wrongful death of plaintiff's intestate who was shot by the security guard employed by defendant corporation, the trial court properly entered summary judgment for the major stockholder and president of defendant corporation, since there was no showing that he was acting in his individual capacity and he was consequently insulated by the corporate entity through which he was doing business.

**3. Negligence § 30.3— shooting death—failure to warn of bullet—no foreseeability**

In an action to recover for the wrongful death of plaintiff's intestate who was shot by a security guard at her place of employment, the trial court properly granted summary judgment for defendant security guard whose shift preceded that of defendant who shot deceased, since the first security guard was under no duty to warn that he had placed an extra bullet in the gun when he transferred the gun to the second guard, who had full knowledge that it was loaded, and even if the first guard were negligent in failing to warn of the extra bullet, his negligence would not be actionable because it was not foreseeable that the second guard would either engage in horseplay or fail to check all the cylinders while unloading the gun.

APPEAL by plaintiff from *Herring, Judge*. Judgment entered 22 January 1979 in Superior Court, DURHAM County. Heard in the Court of Appeals 7 December 1979.

This is an action for wrongful death. Joyce Suggs Thomas, employed as a switchboard operator by Lincoln Hospital, Durham, North Carolina, was unintentionally shot and killed on 7 February 1975, by defendant Poole, employed as a security guard by Guy R. Rankin Security Service Corporation, trading as Vanguard Security Service.

At the hearing on the motion of all defendants for summary judgment, the trial court considered the pleadings, the depositions of defendants Poole and Rankin, the affidavit of defendant Rankin, and a portion of the transcript of the trial in the case of

*State v. Ernest Edward Poole, Jr.* involving a manslaughter charge.

The pleadings and supporting materials tend to show:

Defendant Rankin was a major stockholder and president of defendant corporation, which was in the business of providing security guards and watchmen for several businesses and institutions in the Durham area. The corporation had an oral agreement, existing over a period of several years, with the hospital to provide security guards.

Defendant Poole was employed by defendant corporation as a security guard in early 1973 and was assigned to work at the hospital. On 7 February 1975 defendant Poole was the senior guard at the hospital and his duty shift was from 6:30 to 10:30 p.m. at a duty station located in the lobby area on the first floor and adjoining the switchboard room.

A .38 caliber revolver had been issued by Vanguard Security to defendant Poole, but the pistol was worn in a holster by defendant Dunlap, whose duty shift ended at 6:30. Poole usually loaded the gun with five cartridges, but Dunlap added a sixth cartridge in the chamber, and Dunlap gave the pistol to Poole when Dunlap left his duty station at 6:30.

At the trial on the manslaughter charge, defendant Poole testified that about 10:30 p.m. he received a phone call from the security guard on the successive shift advising him that he was downstairs at the nurses' station. Poole got up to leave. He had not signed the log to indicate the time he was leaving the duty station. Poole took the gun from the holster for the purpose of unloading it before taking it to his home where he had a wife and baby, emptied five cartridges from the gun by dumping them in his left hand, but in doing so did not use the cartridge ejector. Unknown to him one cartridge remained in the gun cylinder. Poole got up to leave and walked behind Joyce Thomas, who was seated at the switchboard. She grabbed his sleeve as he went by. He pulled the pistol out of the holster. She asked him if he was going to the Angel of Mercy Club. Poole said that he may see her there. As he started to walk out of the office, he stated, "I just pulled the trigger on the pistol and it went off." In his deposition defendant Poole stated that the gun accidentally went off and that he did not pull the trigger.

Officer Mitchell of the Durham Police Department testified at the criminal trial that he talked to Poole at the hospital about 11:00 p.m. and Poole told him that he pulled the trigger and it went off, and that he did not know it was loaded because he normally had only five rounds of bullets in the pistol. By using the ejector or push rod, all cartridges would have been ejected from the cylinder.

The Rules and Regulations issued by Vanguard Security Service to its security guards included the following:

"E. Never remove pistol from holster unless you intend to use it.

3. Remember the wearing of a weapon carries with it a grave responsibility, irresponsible behavior should not be tollerated [*sic*] at any time, i.e., quick draw, playing cowboys, toying with weapon or showing it off, flashing gun, etc."

The trial court entered summary judgment dismissing the action against defendant Rankin and defendant Dunlap, and further adjudged:

"3. That Plaintiff have and recover nothing of Defendant Guy R. Rankin Security Service Corporation t/a Vanguard Security Service upon Plaintiff's claim against said Defendant based upon the doctrine of Respondeat Superior;

4. That the Motion of the Defendant Guy R. Rankin Security Service Corporation t/a Vanguard Security Service for Summary Judgment as to the Plaintiff's claim against it based upon its alleged independent negligence is denied; and . . . ."

*Hedrick, Parham, Helms, Kellam & Feerick by Hatcher M. Kincheloe and Kenneth B. Spaulding for plaintiff appellant.*

*Spears, Barnes, Baker & Hoof by Alexander H. Barnes for defendant appellees.*

CLARK, Judge.

[1] We elect to consider initially whether the trial court erred in ruling that plaintiff had no claim against the defendant corporation upon the doctrine of *respondeat superior*.

Under the doctrine of *respondeat superior* the master, or employer, is liable for the negligent acts or omissions of his servant, or employee, while acting as such and within the "scope of his employment." *Jackson v. Mauney*, 260 N.C. 388, 132 S.E. 2d 899 (1963); *Rollison v. Hicks*, 233 N.C. 99, 63 S.E. 2d 190 (1951); *Gillis v. A & P Tea Co.*, 223 N.C. 470, 27 S.E. 2d 283 (1943); 57 C.J.S. *Master and Servant* § 571 (1948); 8 Strong's N.C. Index 3d *Master and Servant* §§ 32 to 36 (1977). Unless there is no material issue of fact as to whether the employee was acting within the scope of his employment, N.C. Gen. Stat. § 1A-1, Rule 56(c); W. Shuford, N.C. Civil Practice and Procedure § 56-7 (1975), the question will be submitted to the jury. *See also*, 8 Strong's N.C. Index 3d *Master and Servant* § 34 (1977), and the authorities cited therein.

The circumstances of the fatal shooting in the case *sub judice* are particularly significant to the question of whether defendant Poole was acting within the scope of his employment and thereby made the defendant corporation liable by application of the doctrine of *respondeat superior*. Since it appears that there were no eyewitnesses to the shooting other than defendant Poole, these circumstances appear in the the deposition of Poole and in the testimony of Poole and Officer M. W. Mitchell, who investigated the homicide and arrived at the scene about 11:00 p.m. and talked with Poole, as transcribed at the criminal trial of defendant Poole on the manslaughter charge.

In his deposition Poole admitted that he told Officer Mitchell that he pulled the trigger, but at that time he was upset and did not understand what was happening. "I did not pull the trigger," stated Poole. "I closed the cylinder with my right hand as I was lifting the gun to put it in the holster." It was "at that point the gun went off." "At the time of this incident," explained Poole, "I thought the gun was fully unloaded."

In contrast, at the manslaughter trial Officer Mitchell testified that Poole made a statement about 12:50 a.m. and said: "I just pulled the trigger on the pistol and it went off. . . . I didn't know it was loaded . . . ."

In the trial on the manslaughter charge defendant Poole testified that he did tell Officer Mitchell that he "just pulled the

trigger and it went off." He added that he was nervous and the statement was made before he consulted legal counsel.

The foregoing transcribed testimony, offered by plaintiff in support of the motion for summary judgment established that defendant did not willfully and maliciously shoot the telephone operator, Joyce Thomas. But his version of the circumstances as related to Officer Mitchell and his version as related in his deposition and in his criminal trial are conflicting.

From Poole's statement to Officer Mitchell it may be reasonably inferred that after Joyce Thomas grabbed his sleeve, Poole engaged in "horseplay" in that, thinking the revolver was empty, he pointed the gun at her and intentionally pulled the trigger. But from his deposition and trial testimony it may also be reasonably inferred that he negligently failed to empty the gun and that it accidentally discharged when he was attempting to put the gun in his holster. These two versions raise a material issue of fact, and, if the evidence at trial is substantially the same as appears in the record before us, the issue must be determined by a jury.

If the jury should find that defendant Poole engaged in "horseplay" in that, thinking the gun was empty, he pointed the gun at the telephone operator and intentionally pulled the trigger after she grabbed and held his sleeve, he deviated from the scope of his employment and engaged in a personal mission of his own, then, as a matter of law, the defendant corporation would not be liable to plaintiff under the doctrine of *respondeat superior. See Norman v. Porter*, 197 N.C. 222, 148 S.E. 41 (1929), where it was held that the employee-son of the store owner deviated from the scope of his employment when he threw a cartridge in the stove and it exploded, hitting plaintiff in the eye. For other "horseplay" cases involving the use of a gun where it was held that the employee was operating outside the scope of his employment, *see, e.g., Olson v. Staggs-Bilt Homes, Inc.*, 23 Ariz. App. 574, 534 P. 2d 1073 (1975); *Scrivner v. Boise Payette Lumber Company*, 46 Idaho 334, 268 P. 19 (1928); *American Ry. Express Co. v. Tait*, 211 Ala. 348, 100 So. 328 (1924); *American Ry. Express Co. v. Davis*, 152 Ark. 250, 238 S.W. 50 (1922); *Smith v. Peach*, 200 Mass. 504, 86 N.E. 908 (1909); *Burns v. Texas Midland R.R.*, 167 S.W. 264 (1914), Cf., *Du Pree v. Babcock*, 100 Ga. App. 767, 112 S.E. 2d 415 (1959).

On the other hand, if the jury should find that defendant Poole was not engaged in horseplay, but negligently failed to remove all cartridges from the gun and, thinking it was empty, negligently handled the gun causing it to discharge and strike Joyce Thomas, then the additional question of whether defendant Poole was acting within the course and scope of his employment would be for the jury to determine under proper instructions from the court. 8 Strong's N.C. Index 3d *Master and Servant* § 34 (1977).

Since the defendant corporation has failed to establish that there was no genuine issue of a material fact relating to the doctrine of *respondeat superior*, the ruling of the trial court allowing summary judgment for the defendant corporation on this question was error.

[2, 3]   We affirm so much of the judgment of the trial court allowing summary judgment for individual defendants Guy R. Rankin and Dwight M. Dunlap. The supporting material fails to show that Rankin was acting in his individual capacity; consequently, defendant Rankin is insulated by the corporate entity through which he was doing business. The material also fails to show actionable negligence on the part of Dunlap. We find no duty on the part of Dunlap to warn of the extra bullet when he transferred the gun to Poole who had full knowledge that the gun was loaded. Even if Dunlap were negligent in failing to warn of the extra bullet, his negligence would not be actionable because it was not foreseeable that defendant Poole would either engage in horseplay or fail to check all the cylinders while unloading the gun. *See also, Smith v. Peach, supra.*

Reversed in part; Affirmed in part.

Judges ARNOLD and ERWIN concur.