RHONDA BUCHANAN GORDON AND JAMES WILLIAMS GORDON, PLAINTIFFS-APPELLANTS v. DANNY FRED GARNER, G.S. MATERIALS, INC., AND AGGREGATE CARRIERS, INC., DEFENDANTS-APPELLEES

No. COA96-1531

(Filed 18 November 1997)

**1. Carriers § 1 (NCI4th)— dump truck accident—sand pit owner—no vicarious liability—not a common or contract carrier**

Defendant G.S. Materials could not be held vicariously liable for the actions of defendant Garner under either North Carolina or federal dump truck statutes and regulations where plaintiff's vehicle was struck from the rear by a dump truck owned and operated by Garner, who was hauling sand from a sand pit owned and operated by G.S. Materials. G.S. Materials mines and sells sand to its customers; it has no dump trucks or other transportation vehicles, is incapable of transporting property for compensation, and is not a common carrier or a contract carrier.

**2. Carriers § 17 (NCI4th)— dump truck accident—Chapt. 62—sand always exempt**

Defendant Aggregate Carriers was not subject to liability under any of the statutes or regulations set forth in Chapter 62 of the General Statutes where plaintiff-Rhonda Gordon's vehicle was struck from the rear by a dump truck owned and operated by defendant Garner under hire to Aggregate Carriers to haul sand for defendant G.S. Materials. N.C.G.S. § 62-260(9) excludes from coverage of Chapter 62 persons engaged in "transportation in

bulk of sand, gravel, dirt, debris, and other aggregates, or ready-mixed paving materials for use in street or highway construction or repair." Sand is always exempted from Chapter 62 regardless of the purpose of such transportation; only ready-mixed paving materials must be used in street or highway construction or repair to qualify for the exemption.

### 3. Carriers § 31 (NCI4th)— dump truck accident—no federal liability—interstate transportation

Defendant Aggregate Carriers was not subject to liability for a traffic accident under federal statutes regulating the commercial dump truck industry because the federal rules and regulations apply only to carriers transporting persons or property in interstate commerce and there is no evidence tending to show that the driver hired by Aggregate was engaged in the interstate transportation of sand at the time of the accident.

### 4. Automobiles and Other Vehicles § 445 (NCI4th)— dump truck collision—independent driver—sand pit operator —trucking company—no liability under respondeat superior

The trial court did not err by granting summary judgment for defendants G.S. Materials and Aggregate Carriers on the issue of their liability under *respondeat superior* for a collision between defendant Garner's dump truck and plaintiffs'.vehicle where the record tends to show that Garner was engaged in an independent business and occupation of hauling materials for contractors like G.S. Materials; Garner held a commercial driver's license and had the independent use of his special skill and training in the execution of his work; he was not subject to discharge if he adopted one method of doing his work rather than another; and G.S. Materials and Aggregate Carriers exercised no direct control over the particular daily activities of Garner when he hauled sand to G.S. Materials' customers. Although plaintiffs argue that an employer-employee relationship existed because Garner regularly worked for G.S. Materials and Aggregate Carriers, hauled sand for no other employers from August until the accident occurred in November, and hired no assistants to help him haul G.S. Materials' sand, the dispositive question is whether Garner had the right to take another job and if he had the right to choose who operated his dump truck, not whether any of those rights were actually exercised.

**5. Automobiles and Other Vehicles § 538 (NCI4th); Negligence § 97 (NCI4th)— dump truck collision—overloaded truck—liability of sand pit operator**

The trial court properly granted summary judgment in favor of G.S. Materials, a sand pit operator, on the issue of whether it was independently negligent in a collision between a dump truck and plaintiffs' auto by allowing the truck driver, an independent contractor, to leave the company pits with an overloaded truck. Even if G.S. Materials had a duty to prevent the driver from leaving with a overloaded truck and breached that duty on that day, there was insufficient evidence to support a finding that the overloaded condition was the proximate cause of the accident. The sole evidence presented by plaintiffs was the testimony of a consulting engineer who did not testify to a degree of reasonable certainty that the driver would have been able to prevent the collision but for being overloaded. Moreover, he was not in possession of such facts as would have enabled him to express a reasonably accurate conclusion as to the cause of the accident and any opinion he expressed as to what "may" not have happened if the truck had not been overloaded lacked factual foundation and is insufficient to raise a genuine issue of material fact on the issue of proximate cause.

**6. Negligence § 97 (NCI4th)— dump truck collision—overloaded truck—driver paid by ton—sand pit operator—no evidence of actual negligence**

The trial court properly granted summary judgment for defendant G.S. Materials, a sand pit operator, in an action arising from a collision between a dump truck operated by an independent contractor and plaintiffs' vehicle on the claim that G.S. Materials is independently negligent for paying truckers by the ton rather than by a time period, so that truckers were encouraged to disobey highway safety rules and regulations. The law in North Carolina is that a plaintiff should not be allowed to get a particular issue to the jury in the absence of evidence, direct or circumstantial, that a defendant actually was negligent and there was no evidence here of that nature.

Appeal by plaintiffs from orders entered 12 July 1996 and 30 October 1996 by Judge Henry V. Barnette, Jr. Heard in the Court of Appeals 28 August 1997.

*Law Offices of Johnny S. Gaskins, by Lisa Campbell Rivers and Johnny S. Gaskins, for plaintiffs-appellants.*

*Yates, McLamb & Weyher, L.L.P., by Andrew A. Vanore, III and Travis K. Morton, for defendant-appellee G.S. Materials, Inc., and Patterson, Dilthey, Clay & Bryson, L.L.P., by Reid Russell and G. Lawrence Reeves, Jr., for defendant-appellee Aggregate Carriers, Inc.*

WYNN, Judge.

Under North Carolina law, vicarious and independent acts of negligence may be a basis for third party liability. In this case, the plaintiff, whose vehicle was struck by a trucker, sought recovery from the companies that hired the trucker to transport sand from the sand pits to a customer. Because we determine that the companies are not vicariously liable under either State or Federal laws that regulate the commercial dump truck industry; and further, because we find that the trucker was an independent contractor, we affirm the trial court's grant of summary judgment in favor of the companies.

This personal injury action arises out of an automobile accident which occurred when Rhonda Buchanan Gordon's vehicle was struck from the rear by a dump truck owned and operated by Danny Fred Garner. On the day of the accident, Garner was hauling sand in his dump truck from a sand pit owned and operated by G.S. Materials, Inc. in Lobelia, North Carolina. As a part of its sand pit business, G.S. Materials mines, sells and then delivers sand to customers in North Carolina and Virginia for their use in making concrete. G.S. Materials, however, does not own or operate any dump trucks capable of hauling the sand from its pits to its customers. The only equipment which G.S. Materials owns are off-road vehicles used in the mining and loading of the sand. Consequently, in order to transport its sand, G.S. Materials utilizes dump trucks owned and operated by co-defendant, Aggregate Carriers, Inc.

As a result of this arrangement, customers wanting a delivery of sand from G.S. Materials must contact and place an order with Aggregate Carriers, who in turn assigns a dump truck to pick up the sand so that it may be hauled from G.S. Materials's Lobelia sand pit to the specified destination. For the most part, Aggregate Carriers trucks are used for these hauls; however, in the event that they are not available, Aggregate Carriers maintains a pool of inde-

pendent dump truck drivers to deliver the sand for its G.S. Materials contracts.

In November 1994, G.S. Materials entered into a contract to sell and deliver sand to Certified Concrete Company in Pittsboro, North Carolina. Aggregate Carriers, however, did not have enough dump trucks at that time to haul all of the sand that G.S. Materials had contracted to deliver. As a result, Aggregate Carriers hired independent drivers including Garner, to haul the sand to Certified Concrete.

As the sole proprietor of "Danny Garner Trucking," Garner had hauled sand for G.S. Materials since August 1994. He started his business in 1990 and operated his truck under a commercial license he obtained after receiving specialized training and passing a test given by the North Carolina Department of Transportation.

G.S. Materials paid Garner a set amount for each ton of sand that he hauled—the rate paid per ton varied depending on how far he had to travel in order to deliver the sand.

When actually delivering G.S. Materials's sand, Garner had no discretion concerning what he was to do with the sand once his truck was loaded. He was required to haul the sand to the customer specified by G.S. Materials. Aggregate Carriers also retained the right to release Garner from his services if he did not perform his duties to their satisfaction. It was in Garner's discretion, however, to decide if and when he would carry a load of G.S. Materials's sand. He also decided how many loads of sand he would carry on any given day and when he would quit work.

On November 11, 1994, Garner decided to pick up his first load of sand from G.S. Materials's Lobelia pit so that he could deliver it to Certified Concrete in Pittsboro. After delivering this first load to Certified Concrete, Garner returned to G.S. Materials's pit to pick up a second load of sand. On this second trip, Garner's truck was loaded with 23.71 tons of sand, over two tons more than his truck was authorized to haul. Despite being overloaded, Garner left G.S. Materials's sand pit to deliver this second load to Certified Concrete; and, it was while traveling with this second load that he slammed into the rear of the vehicle driven by Rhonda Buchanan Gordon.

As a result of the accident, on April 10, 1995, Ms. Gordon and her husband James Williams Gordon filed personal injury and loss of con-

**GORDON v. GARNER**

[127 N.C. App. 649 (1997)]

sortium claims in the Wake County Superior Court. They alleged that Garner negligently drove his truck into Ms. Gordon's vehicle, causing her severe injury, and that in operating his truck Garner acted within the course and scope of his agency and employment with G.S. Materials and Aggregate Carriers. The Gordons further alleged that certain independent acts and omissions committed by both G.S. Materials and Aggregate Carriers joined and concurred with Garner's negligence to produce the collision between Garner's truck and Ms. Gordon's vehicle.

In response to these allegations, G.S. Materials and Aggregate Carriers moved for summary judgment on the issues of their derivative and independent negligence. The Gordons also moved for summary judgment on the issue of Garner's liability. The trial court granted each of these motions; and on October 28, 1996, the remaining damages claims against Garner were tried before the court. A final judgment was entered against Garner and thereafter, the Gordons filed this appeal of the earlier grant of summary judgment in favor of G.S. Materials and Aggregate Carriers.

**I.**

The Gordons first contend that G.S. Materials and Aggregate Carriers are vicariously liable for Garner's actions under: (A) various state and federal statutes, rules, and regulations governing the commercial dump truck industry; and (B) the doctrine of *respondeat superior*. We address each contention in turn.

A. Liability Under Commercial Dump Truck Industry Laws

The Gordons contend that G.S. Materials and Aggregate Carriers are liable for the negligence of Garner under Chapter 62 of the North Carolina General Statutes, which governs the North Carolina Utilities Commission, and certain comparable federal statutes regulating the commercial dump truck industry. Under Chapter 62, a trucking company which falls within the definition of a "public utility" may be held liable for the negligence of the independent truck driver it hires. The Gordons argue that G.S. Materials and Aggregate Carriers are "public utilities" as defined by N.C. Gen. Stat. § 62-3(23) which provides in pertinent part:

(a.) "Public Utility" means a person, . . . now or hereafter *owning or operating* in this state equipment or facilities for:

(4) Transporting . . . property by . . . *motor vehicles* . . . for the public for compensation, except *motor carriers* exempted in G.S. 62-260 . . .[1]

Chapter 62 further defines "motor vehicle" as "any vehicle, machine, tractor, semi-trailer, or any combination thereof, which is propelled or drawn by mechanical power and used upon the highways within the State."[2] Any person who then "holds itself out to the general public to engage in the transportation by motor vehicle in intrastate commerce or property . . . for compensation" is considered a "common carrier by motor vehicle."[3] In that same vein, "any person which, under an individual contract or agreement with another person . . . engages in transportation . . . by motor vehicle of . . . property in intrastate commerce for compensation" is considered a "contract carrier by motor vehicle."[4]

For the reasons set forth below, we conclude that: (1) as to G.S. Materials, neither the definitions under Chapter 62 nor other comparable federal statutes operate to impose liability on it and (2) as to Aggregate Carriers, N.C. Gen. Stat. § 62-260 exempts it from liability and the specific federal statutes relied upon by the Gordons are inapplicable to a determination of its liability.

### (1) *G.S. Materials*

[1] The record in this case reveals that G.S. Materials does not own or operate any trucks, other equipment, or facility capable of transporting sand or any other property to its customers. Therefore, based on the plain language of N.C. Gen. Stat. § 62-3(23)(a.)(4), G.S. Materials does not qualify as a "public utility." Therefore, since G.S. Materials is not a public utility, Chapter 62 does not apply to it.

Moreover, even if G.S. Materials did operate its sand pit business as a "public utility," G.S. Materials is still not subject to the regulations promulgated by the North Carolina Utilities Commission because G.S. Materials does not "transport persons or property by railway or motor vehicle . . . for compensation." Thus, it is neither a common carrier ("any person which holds himself out to the general public to engage in transportation . . . of persons or property . . . for

---

1. N.C. Gen. Stat. § 62-3(23)(a.)(4) (1989) (emphasis added).

2. N.C. Gen. Stat. § 62-3(18).

3. N.C. Gen. Stat. § 62-3(7).

4. N.C. Gen. Stat. § 62-3(8).

compensation") or a contract carrier (engages in such transportation pursuant to a private contract or agreement). Here, G.S. Materials mines sand and then sells it to its customers. It has no dump trucks or other transportation vehicles and is therefore incapable of transporting property for compensation. As such, G.S. Materials is neither a common nor contract carrier subject to Chapter 62 regulations.

The Gordons also allege that G.S. Materials is vicariously liable for Garner's negligence under various regulations promulgated by the North Carolina Utilities Commission, specifically regulations R2-6(a) and R2-37. Regulation R2-6(a) provides in pertinent part:

No carrier authorized to operate as a common carrier of property or a contract carrier of property shall use any vehicle of which such carrier is not the owner for the transportation of property for compensation, except under a bona fide written lease from the owner . . .

Like N.C.G.S. § 62-3(23)(a.)(4), this regulation applies only to common or contract carriers. Because we conclude that G.S. Materials is neither a common nor contract carrier, it follows that this regulation cannot operate to impose liability on G.S. Materials. For this same reason, we conclude that Regulation R-37 is also inapplicable to a determination of G.S. Materials' liability.

We have reviewed the Gordons' arguments regarding G.S. Materials' liability under various federal statutes and regulations, as well as under North Carolina case law involving the statutory regulation of the commercial trucking industry, and because we conclude that G.S. Materials is neither a common nor contract carrier, we further conclude that those regulations are equally inapplicable to a determination of G.S. Materials' liability. Accordingly, we hold that as a matter of law, G.S. Materials cannot be held vicariously liable for the actions of Garner under either North Carolina or federal statutes and regulations.

### (2) Aggregate Carriers

[2] The Gordons also assert that Aggregate Carriers is subject to Chapter 62 liability because it is both a "public utility" and a common or contract carrier by motor vehicle. However, Aggregate Carriers argues that even if it is considered a "public utility" and a commercial carrier for purposes of the statute, it still cannot be held liable under Chapter 62 because it is exempt from such liability under exemption (9) of N.C. Gen. Stat. § 62-260.

N.C.G.S. § 62-260(9), which is referenced in N.C.G.S. § 62-3(23)(a)(4), excludes from coverage of Chapter 62 persons in vehicles engaged in:

> Transportation in bulk of sand, gravel, dirt, debris, and other aggregates, or ready-mixed paving materials for use in street or highway construction or repair;

Aggregate Carriers argues that this particular exemption applies to it because it is engaged in the business of transporting sand in bulk. In response, the Gordons argue that this exemption only applies to the transportation in bulk of sand, if such sand is used in street or highway construction or repair. To the contrary, we find that a careful reading of this exemption, with particular emphasis on punctuation and the word "or," makes it clear that the transportation of sand is always exempted from Chapter 62 regardless of the purpose of such transportation, and that it is only ready-mixing paving materials which must be used in street or highway construction or repair in order to qualify for the exemption. Accordingly, we conclude that Aggregate Carriers is not subject to liability under any of the statutes or regulations set forth in Chapter 62 of North Carolina's General Statutes because of the exemption afforded it by N.C.G.S. § 62-260.

[3] Next, the Gordons contend that Aggregate Carriers is also subject to liability under certain federal statutes which regulate the commercial dump truck industry. The specific federal rules and regulations which the Gordons cite to were promulgated by the Federal Highway Administration and Department of Transportation, and, like Chapter 62 of the North Carolina's General Statutes, they too apply to both common and contract motor vehicle carriers. They differ, however, from Chapter 62's regulations of carriers in a very significant way— they only apply to carriers transporting persons or property in *interstate* commerce.

In the instant case, there is no evidence tending to show that Garner, while driving from Lobelia to Pittsboro was engaged in the transportation of sand in interstate commerce at the time of the accident. Therefore, we hold that as a matter of law, Aggregate Carriers cannot be held vicariously liable for Garner's actions under either North Carolina or federal statutory law.

### B. Liability Under the Doctrine of *Respondeat Superior*

[4] Having found no merit in the Gordons' argument that G.S. Materials and Aggregate Carriers are subject to liability under North

Carolina and federal statutory law, we now consider whether there are any material facts in the record to support the Gordons' assertion that the trial court erred in granting summary judgment in favor of G.S. Materials and Aggregate Carriers on the issue of their alleged liability under the doctrine of *respondeat superior.*

Under the doctrine of *respondeat superior*, for one defendant to be held vicariously liable for the actions of another, an employer-employee relationship must exist between the two.[5] The Gordons argue that such a relationship existed in this case. However, G.S. Materials and Aggregate Carriers argue that the doctrine of *respondeat superior* does not operate to impose liability on them because Garner was an independent contractor at the time of the accident.

Generally, one who employs an independent contractor is not liable for the independent contractor's negligence.[6] Our courts have defined an independent contractor as "one who exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work."[7]

In *Hayes v. Elon College*,[8] our Supreme Court concluded that the central issue in determining whether one is an independent contractor or an employee is whether the hiring party "retained the right of control or superintendence over the contractor or employee as to details."[9] The court then went on to explain that there are generally eight factors to be considered, none of which are by themselves determinative, when deciding the degree of control exercised in a given situation. These factors include whether:

The person employed (a) is engaged in an independent business, calling or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work;

5. *See Thomas v. Poole*, 45 N.C. App. 260, 264, 262 S.E.2d 854, 856 (1986); *White v. Hardy*, 678 F.2d 485, 486 (4th Cir. 1982).

6. *See Cook v. Morrison*, 105 N.C. App. 509, 413 S.E.2d 922 (1992); *Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 364 S.E.2d 433, *reh'g denied*, 322 N.C. 116, 367 S.E.2d 923 (1988).

7. *Youngblood*, 321 N.C. at 384, 364 S.E.2d at 437.

8. 224 N.C. 11, 29 S.E.2d 137 (1944)

9. *Id.* at 15, 29 S.E.2d at 140.

(c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.[10]

Considering several of these factors under the facts of the instant case, we hold that Garner was an independent contractor at the time of the accident.

First, the record tends to show that Garner was engaged in an independent business and occupation. His business was the hauling of materials for contractors like G.S. Materials. At the time of the accident, Garner conducted his business as "Danny Garner Trucking Company," an enterprise he solely owned and operated since 1990. In addition, Garner advertised his business by having his name and phone number painted on his dump truck.

Second, the evidence shows that Garner, who held a commercial driver's license, had the independent use of his special skill and training in the execution of his work. In order to drive his dump truck, Garner obtained a commercial license from the North Carolina Department of Transportation; and before being licensed, Garner attended special commercial driving classes where he received instructions on operating dump trucks and tractor-trailers. Moreover, no one from G.S. Materials or Aggregate Carriers ever instructed Garner on the particulars of how to operate his dump truck when hauling sand. The only instructions Garner received from G.S. Materials regarding the hauling of their sand were general directions to the customer destination.

Further, the record reveals that Garner was not subject to discharge if he adopted one method of doing his work rather than another, and that he retained the power to set his own work hours. He was free to decide if he wanted to work for G.S. Materials or Aggregate Carriers, when and how long he wanted to work, when and how long his breaks or lunch hour would be and how many loads of sand he was going to haul on a given day. In short, G.S. Materials and Aggregate Carriers exercised no direct control over the particular daily activities of Garner when he hauled sand to G.S. Materials' customers.

10. *Id.* at 16, 29 S.E.2d at 140.

**GORDON v. GARNER**

[127 N.C. App. 649 (1997)]

Nonetheless, the Gordons argue that because Garner regularly performed work for G.S. Materials and Aggregate Carriers, an employer-employee relationship existed. They point out that from August 1994 until the time of the accident in November of 1994, Garner hauled sand for no other employers except Aggregate Carriers and G.S. Materials. The Gordons also point out that Garner hired no assistants to help him haul G.S. Materials' sand. These facts alone, however, are not determinative under *Hayes.*

In applying the *Hayes* factors to these facts, the dispositive question is whether Garner had the *right* to take another job if wanted, and if he had the *right* to choose who operated his dump truck, not whether any of those rights were actually exercised. Here, Garner, at all times in his dealings with G.S. Materials and Aggregate Carriers, maintained both the right to seek other employment if he chose to and the right to hire assistants if he found them necessary.

Under these circumstances, we conclude that the facts here are susceptible to only one conclusion—that at the time of the accident, Garner was an independent contractor hired by Aggregate Carriers to haul sand for G.S. Materials.[11] Accordingly, we hold that the trial court did not err in granting summary judgment in favor of G.S. Materials and Aggregate Carriers on the issue of their liability under the doctrine of *respondeat superior.*

## II.

By their second assignment of error, the Gordons assert two theories under which G.S. Materials should be held liable for its own negligence: (A) G.S. Materials negligently allowed Garner to leave its sand pit with an overloaded dump truck and (B) G.S. Materials negligently employed a compensation method which encouraged truckers like Garner to haul sand while overloaded and to speed in order to complete more trips each day. We consider each of these theories in turn.

### A. Negligently Allowing Overloaded Truck to Leave Sand Pit

[5] Negligence is generally defined as the failure to exercise a duty of a care for the safety of another.[12] In order to establish actionable neg-

---

11. *See Yelverton v. Lamm,* 94 N.C. App. 536, 538-39, 380 S.E.2d 621, 623 (1989) (holding that when evidence is susceptible of only one conclusion, the question of whether a working party is an independent contractor or employee is question of law for the court).

12. *Thomas v. Dixon,* 88 N.C. App. 337, 363 S.E.2d 209 (1988).

GORDON v. GARNER

[127 N.C. App. 649 (1997)]

ligence, a plaintiff must show that: (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligence breach of such duty was the proximate cause of the injury.[13] Proximate cause is generally defined as a foreseeable cause, without which the Gordons' injuries would not have occurred.[14]

Viewing the evidence in the light most favorable to the Gordons, as we must when reviewing the propriety of a trial court's grant of summary judgment, we conclude that even if G.S. Materials had a duty to prevent Garner from leaving its sand pit with an overloaded truck and that it breached that duty on the day of the accident, the Gordons still did not make out a valid claim of actionable negligence because there is insufficient evidence in the record to support a finding that the overloaded condition of Garner's truck was the proximate cause of the November 11 accident.

The sole evidence that the Gordons presented to show proximate cause is the testimony of a consulting engineer who performed an accident reconstruction analysis. He testified that it was more difficult to stop an overloaded truck than it was to stop one that was not overloaded. He also testified that Garner may have been able to prevent his dump truck from colliding with Ms. Gordon's vehicle had his truck not been overloaded and had he not been driving at an excessive speed, or, that he would have at least been able to slow down so that a collision, if one occurred, would have only been minor. The engineer, however, did not testify to a degree of reasonable certainty that Garner would have been able to prevent his truck from colliding with Ms. Gordon's vehicle but for the fact that it was overloaded. In fact, when specifically asked by defense counsel whether he believed that Garner's truck, if not overloaded but nevertheless speeding, would have still collided with Ms. Gordon's vehicle, the engineer stated that he believed it would have.

Moreover, our review of the engineer's deposition testimony reveals that in performing his reconstruction analysis, he did not run any test on the truck driven by Garner; he did not talk to Garner regarding the accident (all the information he obtained about the accident he gained from the accident report and the officer called to the scene); he did not make any calculations as to the extent to which

---

13. *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 232, 311 S.E.2d 559, 564 (1984).

14. *Bolkhir v. N.C. State University*, 321 N.C. 706, 365 S.E.2d 898 (1988).

the extra two tons of sand contributed to Garner's inability to slow down his truck; and he did not calculate into his analysis the actual point at which Garner began to apply his breaks before colliding with Ms. Gordon's vehicle. Given these circumstances, and the fact that the engineer never testified to any degree of scientific certainty that the overloaded condition of Garner's truck was a cause without which the Gordons' injuries would not have occurred, we cannot consider his opinion as to the cause of the November 11 accident to be anything other than mere speculation and conjecture. As our Supreme Court explained in *Lockwood v. McCaskill*,[15]

> [an] expert may express the opinion that a particular cause "could" or "might" have produced the result indicating that the result is capable of proceeding from the particular cause as a scientific fact, i.e., reasonable probability in the particular scientific field;

The Court further pointed out that, however:

> [I]f it is not reasonably probable, as a scientific fact, that a particular effect is capable of production by a given cause, and the witness so indicates, the evidence is not sufficient to establish prima facie the causal relation.[16]

The engineer in this case was not in possession of such facts as would have enabled him to express a reasonably accurate conclusion as to the cause of the accident. Therefore, any opinion he did express as to what "may" not have happened if Garner's truck had not been overloaded lacked factual foundation and is therefore deemed insufficient to raise a genuine issue of material fact on the question of proximate cause.[17] Accordingly, we hold that the trial court properly granted summary judgment in favor of G.S. Materials on the issue of whether it was independently negligent in allowing Garner to leave the company pits with an overloaded truck.

### B. Negligent Method of Compensation

[6] Finally, we reach the Gordons' assertion that a jury should have been allowed to determine whether the compensation system which

---

15. 262 N.C. 663, 668-69, 138 S.E.2d 541, 545-46 (1964).

16. *Id.*

17. *See Jenkins v. Starrett Corp.*, 13 N.C. App. 437, 444, 186 S.E.2d 148, 202 (1972) ("[i]nasmuch as the burden of establishing negligence is on the plaintiff, evidence which raises only a conjecture of negligence may not properly be submitted to the jury").

G.S. Materials had in effect contributed to the accident in question. The Gordons contend that G.S. Materials is independently negligent for paying Garner and other truckers in its employ by the ton for the sand that they hauled, as opposed to by the day, week or year that they worked. This method, they contend, encouraged Garner and other truckers to disobey highway safety rules and regulations for the sake of making more money. In asserting this contention, however, the Gordons brought forth no evidence tending to show that G.S. Materials was somehow negligent in paying its truckers by this method of compensation. The law in this State is that a plaintiff should not be allowed to get a particular issue to the jury in the absence of evidence, direct or circumstantial, that a defendant *actually was* negligent.[18] There being no evidence here of that nature, the issue of whether G.S. Materials' method of compensating its truckers was in fact the cause of the Gordons' injuries must be left in the realm of speculation and conjecture.

## CONCLUSION

We hold that the trial court properly granted summary judgment in favor of G.S. Materials and Aggregate Carriers on all of the Gordons' claims against them. Accordingly, the order below is,

Affirmed.

Judges GREENE and MARTIN, Mark D., concur.

––––––––––––
18. *Id.* (Emphasis in original).