Salon Blu, Inc. v. Salon Lofts Grp., LLC, 2018 NCBC 70.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

SALON BLU, INC.,

　　　　　　Plaintiff,

　　v.

SALON LOFTS GROUP, LLC,

　　　　　　Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 12778

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendant Salon Lofts Group, LLC's Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss"; ECF No. 42).

THE COURT, having considered the Motion to Dismiss, the briefs filed in support of and in opposition to the Motion to Dismiss, the arguments of counsel at the hearing, and other appropriate matters of record, concludes that the Motion to Dismiss should be GRANTED for the reasons set forth below.

> *Harris, Wiltshire & Grannis LLP, by Amy E. Richardson and Deepika H. Ravi (pro hac vice) for Plaintiff Salon Blu, Inc.*
>
> *Morningstar Law Group, by Shannon R. Joseph and Jeffrey L. Roether, and Porter Wright Morris & Arthur LLP, by Ryan P. Sherman (pro hac vice) for Defendant Salon Lofts Group, LLC.*

McGuire, Judge.

I.　　FACTS AND PROCEDURAL BACKGROUND

　　A.　　*Parties*

1.　　Plaintiff Salon Blu, Inc. ("Salon Blu") is a corporation with its principal place of business in Raleigh, North Carolina. Salon Blu operates three hair salons in

Raleigh and employs professional hair stylists in its salons. (Am. Compl., ECF No. 30, at ¶ 2.)

2. Defendant Salon Lofts Group, LLC ("Salon Lofts") also has its principal place of business in Raleigh, North Carolina. Salon Lofts competes with traditional hair salons, such as Salon Blu, by renting booths within its facilities to independent professional hair stylists. (*Id.* at ¶ 16.) In exchange for rent payments, Salon Lofts provides the independent stylists with a booth within which to perform hair styling services and provides the stylists assistance with "marketing, customer relations and client management, scheduling, product acquisition, business development, social media training, webpage development, and continued education in hairstyling." (*Id.*) Salon Blu does not allege that Salon Lofts receives any share of stylists' revenues from hair services provided by the stylists, only the rent payment for the booth.

B. *The restrictive covenants and Salon Blu's confidential and proprietary information*

3. In consideration for employment, Salon Blu requires its stylists to enter into an Employment Agreement. (*Id.* at ¶¶ 3, 26.) The Employment Agreement contains a restrictive covenant which provides that the stylist "shall not engage in the business of hairstyling or solicit Salon Blu customers for a period of one year after termination of employment at Salon Blu, within a five-mile radius of any Salon Blu location at which the employee provided services on behalf of Salon Blu." (*Id.* at ¶ 9.)

4. The Employment Agreement also contains a confidentiality provision that requires the stylists to "treat all proprietary information belonging to Salon Blu as confidential," and the stylist agrees that he or she "shall not use such information

or divulge, disclose or communicate such information in any way" during his or her employment and for three years after terminating employment with Salon Blu. (*Id.* at ¶ 4.)

5.   Salon Blu alleges that, *inter alia*, its "client contact information" and "client hair coloring formula information" are proprietary and confidential. (*Id.* at ¶¶ 5–6.) All customer contacts with Salon Blu are conducted through the front desk at the stylist's salon location. Stylists "are expressly forbidden from gathering client contact information, including by sending or accepting friend requests from clients on social media." (*Id.* at ¶ 5.)

6.   Salon Blu's hair coloring formulas are unique to each customer. (*Id.* at ¶ 6.) The hair coloring formulas are arrived at by using various hair dyes and considering the "tone, brassiness, and hair texture" of the customer's hair. Salon Blu does not share the hair coloring formulas with anyone outside of Salon Blu. (*Id.*) Salon Blu alleges that "[w]ithout Salon Blu's guidance, training, equipment, and expertise, Salon Blu stylists could not independently develop these color formulas." (*Id.*)

7.   Salon Blu maintains a computer database containing its confidential and proprietary information, which can only be accessed with "appropriate credentials." (*Id.* at ¶ 25.) The database includes "client contact information, information regarding clients' personalities and life events, clients' hair color formulas, and clients' hairstyle and purchase history." (*Id.*) Stylists only have access to the information in the database regarding hair coloring formulas and "client notes."

(*Id.*) The Amended Complaint does not allege what information is considered part of "client notes," but at the hearing on the Motion to Dismiss, Plaintiff's counsel conceded that stylists do not have access to client contact information in the database. No Salon Blu employee is permitted to "collect" information from the database. (*Id.*)

C. *Salon Lofts' recruitment and solicitation of Salon Blu's stylists*

8. Between April and July 2017, seven Salon Blu stylists terminated employment with Salon Blu and began providing hair styling services at Salon Lofts locations within five miles of the Salon Blu location at which they were employed. (*Id.* at ¶¶ 10–11.) Each of the seven former Salon Blu stylists had signed an Employment Agreement with Salon Blu. (*Id.* at ¶ 10.)

9. Salon Blu alleges that Salon Lofts "engaged . . . in aggressive recruitment efforts to induce Salon Blu's employees to terminate their employment with Salon Blu" and to rent space from Salon Lofts. (*See id.* at ¶ 12.) Salon Blu claims that Salon Lofts "knew or should have known that Salon Blu's employees had Employment Agreements with Salon Blu containing restrictive covenants involving Salon Blu's business practices, customers, and confidential and proprietary information" because such agreements are "common practice in the hairstyling business." (*Id.* at ¶ 36.)

10. Upon information and belief, Salon Blu alleges that Salon Lofts encouraged Salon Blu stylists to breach the restrictive covenants and confidentiality provisions of their Employment Agreements and to misappropriate Salon Blu's trade secrets. (*Id.* at ¶¶ 8, 12, 13, 30, and 31.) Salon Lofts encouraged Salon Blu stylists

to record the proprietary hair coloring formulas and "other proprietary information about Salon Blu customers and [to] use[] that information to solicit Salon Blu's customers to their booths at Salon Lofts." (*Id.* at ¶ 8.) Salon Blu does not allege that the stylists disclosed Salon Blu's confidential information to Salon Lofts.

11. On August 29, 2017, counsel for Salon Blu sent a letter to Salon Lofts' CEO notifying Salon Lofts that "several of Salon Blu's former employees were breaching their obligations under the Restrictive Covenants." (*Id.* at ¶ 28.) Salon Blu alleges that the August 29, 2017 letter put Salon Lofts "on notice regarding Salon Blu's restrictive covenants." (*Id.* at ¶ 36.)

12. On September 13, 2017, Salon Blu sent a second letter to Salon Lofts "stating that Salon Lofts' practice of enticing Salon Blu employees to breach their Employment Agreements constituted tortuous interference with contract." (*Id.* at ¶ 32.) Despite the letters, Salon Lofts allegedly continued to induce Salon Blu stylists to violate their restrictive covenants. (*Id.* at ¶ 33.) The Amended Complaint, however, does not identify any specific individual stylist who left Salon Blu after July 2017.

13. Salon Blu claims that it has suffered damages resulting from Salon Loft's alleged conduct. (*Id.* at ¶ 14.)

D. *Procedural history*

14. Salon Blu filed this action on October 20, 2017 in the Superior Court of Wake County against Salon Lofts and four of Salon Blu's former stylists: Meredith Peoples, Maureen Roberti, Amy Torres Bercian, and Ivy Hoffman (collectively, the

"Former Stylists"). (ECF No. 3.) The original Complaint contained a claim against the Former Stylists for breach of the Employment Agreements, claims against all of the Defendants for misappropriation of trade secrets and unfair methods of competition, and a claim against Salon Lofts for tortious interference with contract. (*Id.* at ¶¶ 46–77.)

15. On October 25, 2017, this matter was designated to the Business Court by order of Chief Justice Mark Martin and assigned to the undersigned. (ECF Nos. 1 and 2.)

16. Salon Blu subsequently took voluntary dismissals with prejudice of its claims against each of the Former Stylists. (ECF Nos. 10, 15, 19, and 27.)

17. On December 28, 2017, Salon Lofts filed a motion to dismiss. (ECF No. 11.) On January 12, 2018, Salon Lofts filed its answer to the Complaint. (ECF No. 26.)

18. On January 17, 2018, Salon Blu filed a Motion for Leave to File Amended Complaint (ECF No. 28), along with a proposed Amended Complaint (ECF No. 30). Salon Lofts consented to the filing of the Amended Complaint, and on January 19, 2018, the Court entered an order granting Salon Blu leave to file the Amended Complaint and deeming the Amended Complaint filed on January 19, 2018. (ECF No. 33.) The Amended Complaint alleges claims against Salon Lofts for tortious interference with contract, misappropriation of trade secrets, and unfair methods of competition under N.C. Gen. Stat. § 75-1.1 (hereinafter "G.S.").

19.     On February 23, 2018, Salon Lofts filed the Motion to Dismiss along with its brief in support of the Motion to Dismiss. (ECF No. 43.) On March 15, 2018, Salon Blu filed a response in opposition to the Motion to Dismiss (ECF No. 47), and on March 28, 2018, Salon Lofts filed a reply brief (ECF No. 48).

20.     On April 12, 2018, the Court held a hearing on the Motion to Dismiss at which counsel presented argument. The Motion to Dismiss is now ripe for determination.

II.     ANALYSIS

21.     Salon Lofts moves to dismiss Plaintiff's claims against it under G.S. § 1A-1, Rule 12(b)(6) (hereinafter "Rule(s)") for failure to state a claim upon which relief may be granted.

22.     In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). North Carolina is a notice pleading state. *See, e.g.*, *Feltman v. City of Wilson*, 238 N.C. App. 246, 251–52, 767 S.E.2d 615, 619–20 (2014) (quoting *Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 646, 762 S.E.2d 477, 486 (2014)). "Under notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought." *Id.*

23.     Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).  In deciding a motion to dismiss, the Court must construe the complaint liberally and accept all well-pleaded allegations as true.  *See Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).  The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005).  In addition, the Court may consider documents that are the subject of plaintiff's complaint and to which the complaint specifically refers.  *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

A.      *Count I: Tortious interference with contract*

24.     Salon Blu alleges that Salon Lofts intentionally interfered with Salon Blu's Employment Agreements with its former employees and that Salon Lofts induced the former Salon Blu employees to breach their Employment Agreements by going to work for Salon Lofts within five miles of the Salon Blu locations where they worked.  (ECF No. 30, at ¶ 37.)  Salon Blu claims that Salon Lofts sought to gain an advantage over Salon Blu by having Salon Blu's former employees bring valuable

customers over to Salon Lofts and by inducing the former employees to divulge Salon

Blu's confidential and proprietary information. (*Id.*)

25.     Salon Blu alleges that Salon Lofts "knew or should have known" that

Salon Blu's employees had Employment Agreements that contained restrictive

covenants because it is "common practice in the hairstyling business" to include such

restrictive covenants in employment agreements. (*Id.* at 36.)  Further, Salon Blu

argues that Salon Lofts was "put on notice" about the restrictive covenants on August

29, 2017, when Salon Blu's counsel informed Salon Lofts about the former employees'

Employment Agreements. (*Id.*)  In response, Salon Lofts argues that Salon Blu did

not adequately allege in the Amended Complaint that Salon Lofts had knowledge of

the Employment Agreements and also argues that Salon Lofts' actions were justified

as legitimate business competition. (Br. Supp. Mot. Dismiss Pl.'s Am. Compl., ECF

No. 43, at pp. 9–10.)

26.     A claim for tortious interference requires

> (1) a valid contract between the plaintiff and a third
> person which confers upon the plaintiff a contractual
> right against a third person; (2) the defendant knows of
> the contract; (3) the defendant intentionally induces the
> third person not to perform the contract; (4) and in
> doing so acts without justification; (5) resulting in
> actual damage to plaintiff.

*United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

However, interference is justified "if it is motivated by a legitimate business purpose."

*Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924

(1992).  "[C]ompetition in business constitutes justifiable interference in another's

business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988). "[T]o demonstrate the element of acting without justification, the action must indicate no motive for interference other than malice." *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 523, 586 S.E.2d 507, 510 (2003) (internal quotations omitted). Legal malice involves actions "taken with the design of injuring one of the parties to the contract or of gaining some advantage at the expense of a party." *Murphy v. McIntyre*, 69 N.C. App. 323, 328–29, 317 S.E.2d 397, 401 (1984).

27. The Court concludes that Plaintiff has not adequately pleaded that Salon Lofts had knowledge of the former employees' Employment Agreements. The North Carolina Supreme Court recently held that when alleging a claim for tortious interference with contract, it is not enough to broadly allege that the defendants had "knowledge of the contracts"; rather, a complaint must contain "facts sufficient to make a good claim" that the defendants knew of the contracts at issue. *Krawiec v. Manly*, 370 N.C. 602, 606–07, 811 S.E.2d 542, 546–47 (2018). Salon Blu does not allege any facts supporting the conclusion that Salon Lofts had knowledge of the Employment Agreements; in fact, Salon Blu merely alleges that Salon Lofts "knew or should have known" about the Employment Agreements, an allegation that is far too vague to satisfy the pleading requirements under *Krawiec*. Salon Blu's claim for tortious interference with contract fails on this basis alone; however, the Court will

further address Salon Lofts' argument that its actions were justified as having a legitimate business purpose.

28. Salon Lofts also argues that it is protected by the business justification exception because it was merely competing with Salon Blu and because there are no allegations that Salon Lofts was acting with malice. (ECF No. 43, at pp. 9–11.) Salon Blu counters that the business justification exception cannot apply in this case because Salon Lofts does not compete with Salon Blu for employee contracts, since Salon Lofts does not hire the beauty professionals who work in Salon Lofts' facilities. (ECF No. 47, at p. 7.)

29. Despite Salon Blu's argument, Salon Blu concedes in its Amended Complaint that "Salon Lofts competes with traditional salons," such as Salon Blu, suggesting that Salon Blu considers Salon Lofts a competitor. (ECF No. 30, at ¶ 16.) Furthermore, as Salon Lofts argues, Salon Blu does not sufficiently allege that Salon Lofts acted with "no motive for interference other than malice." *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001); *see also Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605, 646 S.E.2d 826, 833 (2007) ("[G]eneral allegations of malice are insufficient as a matter of pleading."). Salon Lofts' alleged actions, such as recruiting employees of Salon Blu, could have been for legitimate business competition purposes and do not necessarily indicate a motive for interference other than malice. Accordingly, Salon Blu has failed to adequately plead that Salon Lofts acted with malice.

30.     Because Salon Blu has not sufficiently pled that Salon Lofts had knowledge of the Employment Agreements or that Salon Lofts acted with malice, Salon Blu's claim for tortious interference fails.  Salon Lofts' Motion to Dismiss Salon Blu's claim for tortious interference with contract should be GRANTED.

B.     *Count II: Misappropriation and misuse of trade secrets*

31.     In its second claim, Salon Blu alleges that Salon Lofts "encouraged and induced" former employees of Salon Blu to collect Salon Blu's confidential and proprietary information to use while working at Salon Lofts.  (ECF No. 30, at ¶ 44.) Specifically, Salon Blu claims that the former employees violated Salon Blu's policy against the collection of customer contact information, hair color formulas, and other customer information.  (ECF No. 30, at ¶¶ 43–44.)  Salon Lofts argues that Salon Blu's allegedly misappropriated information does not constitute trade secrets and that Salon Lofts' mere encouragement or inducement of Salon Blu's stylists to gather Salon Blu's confidential information is not enough to sufficiently allege "acquisition, disclosure, or use" by Lofts that constitutes misappropriation.  (ECF No. 43, at pp. 13–19.)

32.     Under the NCTSPA, a "trade secret" is defined as

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

G.S. § 66-152(3). "Misappropriation" is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." G.S. § 66-152(1). Trade secrets must be pled with sufficient particularity "so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003). In addition, a plaintiff must "identify with sufficient specificity . . . the acts by which the alleged misappropriations were accomplished," and the allegations cannot be "broad and vague." *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 327, 660 S.E.2d 577, 586 (2008).

33. The Court need not reach the question of whether Salon Blu's confidential information is a trade secret because Salon Blu has failed to allege any acts by which Salon Lofts misappropriated Salon Blu's confidential information. First, Salon Blu does not plead facts that would support an allegation that Salon Lofts acquired, disclosed, or used Salon Blu's confidential information. G.S. § 66-152(1). There are no allegations that Salon Blu's former stylists disclosed customer contact information, hair coloration formulas, or any other confidential information to Salon Lofts. While Salon Blu makes the conclusory allegation that Salon Lofts has "used" Salon Blu's confidential information, the facts alleged do not support this claim.

Instead, Salon Blu has alleged that "Salon Blu's former employees, at the direction of Salon Lofts, recorded the proprietary formulas and other proprietary information about Salon Blu customers and used that information to solicit Salon Blu's customers to their booths at Salon Lofts." (ECF No. 30, at ¶ 8.) Salon Blu, however, has not alleged facts that would support an allegation that Salon Lofts is vicariously liable for the acts of Salon Blu's former stylists. Salon Blu concedes that Salon Lofts does not employ the former Salon Blu stylists at issue; the former stylists are instead tenants who rent space from Lofts. (ECF No. 30, at ¶ 16); *see Gordon v. Garner*, 127 N.C. App. 649, 658, 493 S.E.2d 58, 63 (1997) ("Under the doctrine of respondeat superior, for one defendant to be held vicariously liable for the actions of another, an employer-employee relationship must exist between the two."). There is also no allegation that the former stylists were agents of Salon Lofts. Therefore, any attempt by Salon Blu to attribute the conduct of its former stylists to Salon Lofts must fail.[1]

34. In addition, Salon Blu's allegations that Salon Lofts encouraged and induced Salon Blu's stylists to collect its confidential information for use after they left Salon Blu is not sufficient to allege misappropriation. *See Control Module, Inc. v. Data Mgmt., Inc.*, 2007 U.S. Dist. LEXIS 90146, at *11 (D. Conn. Dec. 10, 2007) (dismissing trade secret claim because the Connecticut statute requires actual acquisition, disclosure or use and plaintiff merely alleged that defendant "induced, encouraged, aided or abetted" the use of trade secret information by others); *Cent.*

---

[1] Indeed, there would not appear to be any use that Salon Lofts could make of contact information or color formulations for Salon Blu's customers, since Salon Lofts' "customers" are its tenant-stylists and not the end users of salon services.

*Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 323 n.11 (Mo. 2014) (affirming dismissal of trade secret claim because the Missouri statute "expressly requires acquisition, disclosure, or use of a trade secret to show misappropriation [and] [i]t contains no indication that 'aiding and abetting' someone else's misappropriation is enough to trigger liability").

35.     Salon Blu has failed to allege that Salon Lofts misappropriated Salon Blu's trade secrets.  Therefore, Salon Lofts' Motion to Dismiss Salon Blu's claim for misappropriation of trade secrets should be GRANTED.

C.     *Count III: Unfair methods of competition under G.S. § 75-1.1*

36.     In its third claim, Salon Blu alleges that the misappropriation of trade secrets and tortious interference are unfair trade practices under G.S. § 75-1.1.  Salon Lofts contends that this claim must fail because Salon Blu has not adequately alleged the underlying claims for misappropriation of trade secrets or tortious interference, and so there is no basis for Salon Blu's claim for unfair and deceptive trade practices.

37.     A violation of unfair and deceptive trade practices under G.S. § 75-1.1 occurs when "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).  An act is unfair when a party "engages in conduct which amounts to an inequitable assertion of its power or position," and an act is unfair or deceptive if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to

customers." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 607, 659 S.E.2d 442, 448 (2008).

38.    To survive a motion to dismiss, unfair and deceptive trade practices claims must allege that the defendant committed an unfair or deceptive act or practice. As discussed above, Salon Blu has not alleged any wrongful acts besides tortious interference with contract and misappropriation of trade secrets, both of which claims the Court has already determined should be dismissed. Since Salon Blu has not alleged any unfair or deceptive acts on the part of Salon Lofts, Salon Blu's claim must fail. *See Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 374, 555, S.E.2d 634, 642 (2001) ("[P]laintiff's claim that defendants engaged in unfair and deceptive trade practices rests with its claims for misappropriation of trade secrets, tortious interference with contracts and civil conspiracy. Having determined that the trial court properly granted summary judgment on each of these claims, we likewise conclude that no claim for unfair and deceptive trade practices exists."); *Amerigas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98, at *40–41 (N.C. Super. Ct. Oct. 15, 2015) (dismissing claim under UDTPA where court had already dismissed underlying claims). Accordingly, Salon Lofts' Motion to Dismiss Salon Blu's claim for unfair methods of competition under G.S. § 75-1.1 should be GRANTED.

THEREFORE, IT IS ORDERED that:

39.    Defendant Salon Lofts Group, LLC's Motion to Dismiss Plaintiff's Amended Complaint is GRANTED.

SO ORDERED, this the 16th day of July, 2018.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases