IN THE SUPREME COURT OF NORTH CAROLINA

No. 146PA17

Filed 8 June 2018

WAYNE T. BRACKETT, JR.,

        Petitioner

        v.

KELLY J. THOMAS, Commissioner of the North Carolina Division of Motor Vehicles,

        Respondent

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 798 S.E.2d 778 (2017), affirming an order signed on 14 June 2016 by Judge Susan E. Bray in Superior Court, Guilford County. Heard in the Supreme Court on 13 March 2018.

*Joel N. Oakley for petitioner-appellee.*

*Joshua H. Stein, Attorney General, by Christopher W. Brooks, Special Deputy Attorney General, for respondent-appellant.*

MORGAN, Justice.

In this matter, we reaffirm the well-established standard of review when a court reviews a final agency decision by the North Carolina Division of Motor Vehicles (DMV) to revoke a driver's license for willful refusal to submit to a chemical analysis. In determining that the DMV erred in concluding that such a willful refusal had occurred, the Court of Appeals here overstepped its role by making witness credibility

determinations and resolving contradictions in the evidence presented during the DMV's administrative hearing concerning the license revocation. Utilizing the proper standard of review, we conclude that the unchallenged findings of fact made by the DMV support the only disputed legal conclusion, thus requiring us to uphold the DMV's decision to revoke the driving privileges at issue. Accordingly, we reverse the decision of the Court of Appeals in this matter.

On 13 August 2015, petitioner Wayne T. Brackett, Jr. was arrested in Guilford County and charged with the offense of driving while impaired. Thereafter, respondent Kelly J. Thomas, Commissioner of the DMV, notified petitioner that, effective 20 September 2015, petitioner's driving privileges would be suspended and revoked based on petitioner's refusal to submit to a chemical analysis. In response, petitioner requested an administrative hearing before the DMV pursuant to the Uniform Driver's License Act. *See* N.C.G.S. § 20-16.2(d) (2017). That hearing was conducted on 7 January 2016, after which the DMV hearing officer upheld the revocation of petitioner's driving privileges, making numerous findings of fact and conclusions of law in his written decision. Petitioner has never challenged the hearing officer's findings of fact,[1] which are therefore binding on each reviewing court. *See e.g.*, *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962) ("Where

---

[1] In his 19 January 2016 petition for judicial review of the DMV's final agency decision in the superior court, petitioner challenged only "the conclusion of the [DMV] that [he] willfully and unlawfully refused to submit to a chemical test."

no exceptions have been taken to the findings of fact, such findings are presumed to

be supported by competent evidence and are binding on appeal." (citations omitted));

*see also Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). These

findings therefore provide the factual record of the events underlying this appeal:

1. On August 13, 2015, Officer Brent Kinney, Guilford County Sheriff's Office, was stationary in the Food Lion parking lot at 7605 North NC Hwy 68 when he observed the petitioner and a female walking to the connecting parking lot of a bar, Stoke Ridge, between 9:30-9:40 [p.m.]. He noted the petitioner had a dazed appearance and was unsure on his feet.

2. Officer Brent Kinney observed the petitioner enter the driver's seat of a gold Audi, back out of the parking space, and quickly accelerate to about 26 mph in the Food Lion parking [lot].

3. Officer Brent Kinney got behind the petitioner until the petitioner stopped in the parking lot. At that point Officer Brent Kinney observed both doors open and the petitioner and the female exit the vehicle.

4. Officer Brent Kinney lost sight of the vehicle when he exited the parking lot. Then he got behind the vehicle when it exited the parking lot.

5. Officer Brent Kinney observed the gold Audi cross the yellow line twice and activated his blue lights and siren.

6. The female was driving and Officer Brent Kinney determined she was not impaired.

7. Officer Brent Kinney detected a strong odor of alcohol on the petitioner, whom he saw driving in the PVA of Food Lion and observed he had slurred speech, glassy eyes and was red-faced.

8.    The petitioner put a piece of candy in his mouth even after Officer Brent Kinney told him not to do so. He subsequently removed the piece of candy when asked to do so.

9.    Officer Brent Kinney asked the petitioner to submit to the following tests:  1) Recite alphabet from E-U—Petitioner recited E, F, G, H, I, J, K, L, M, N, O, P and stopped; and 2) Recite numbers backwards from 67-54—Petitioner recited 67, 66, 65, 4, 3, 2, 1, 59, 8, 7, 6, 5, 4, 3, 2, 1.

10.   Officer Brent Kinney arrested the petitioner, charging him with driving while impaired, and transported him to the Guilford County jail control for testing.

11.   Officer Brent Kinney, a currently certified chemical analyst with the Guilford County Sheriff's Office, read orally and provided a copy of the implied consent rights at 10:30 [p.m.]  The petitioner refused to sign the rights form and did not call an attorney or witness.

12.   Officer Brent Kinney explained and demonstrated how to provide a sufficient sample of air for the test.

13.   Officer Brent Kinney requested the petitioner submit to the test at 10:49 [p.m.]  The petitioner did not take a deep breath as instructed and faked blowing as the instrument gave no tone and the [gauge] did not move, indicating no air was being introduced.

14.   Officer Brent Kinney warned the petitioner that he must blow as instructed or it would be determined he was refusing the test and explained again how to provide a sufficient sample.

15.   The petitioner made a second attempt to submit to the test. This time he did take a breath but then gave a strong puff and then stopped; and then gave a second strong puff and stopped.

16.   The petitioner's second attempt concluded at 10:50 [p.m.] at which time Officer Brent Kinney determined he was refusing the test by failing to follow his instructions and marked the refusal at that time.

17. The petitioner's second attempt resulted in a detection of mouth alcohol. With that, Officer Brent Kinney had to reset the instrument, not to provide another opportunity for the petitioner to take the test, but to enter the refusal into the instrument.

18. In spite of the test ticket recording the refusal at 10:56 [p.m.], the DHHS 4081 indicates the refusal was actually at 10:50 [p.m.]

19. The doctor's note indicates the petitioner's asthma appears to be stabilized with medication and anxiety disorder is managed by Xanax.

Based upon these findings of fact, the hearing officer made the following conclusions of law and upheld the revocation of petitioner's driver's license:

1. [Petitioner] was charged with an implied-consent offense.

2. Officer Brent Kinney had reasonable grounds to believe that [petitioner] had committed an implied-consent offense.

3. The implied-consent offense charged involved no death or critical injury to another person.

4. [Petitioner] was notified of his rights as required by N.C.G.S. 20-16.2(a).

5. [Petitioner] willfully refused to submit to a chemical analysis.

*See* N.C.G.S. § 20-16.2(d) (providing that the hearing before the DMV "shall be limited to consideration of" five matters: whether a driver was charged with an implied-consent offense, whether a law enforcement officer had reasonable grounds to believe the driver committed an implied-consent offense, whether the implied-consent offense charged involved death or critical injury to another person, whether the driver

was notified of his rights, and whether the driver "willfully refused to submit to a chemical analysis").

On 19 January 2016, petitioner filed a petition for judicial review in the Superior Court, Guilford County, challenging the hearing officer's final conclusion of law: that petitioner had willfully refused to submit to a chemical analysis. *See id.* § 20-16.2(e) (2017) (providing that a "person whose license has been revoked has the right to file a petition [for judicial review] in the superior court"). The superior court heard the matter on 6 June 2016, ultimately reversing the DMV hearing officer's decision because "[t]he record does not support the conclusion under N.C.G.S. § 20-16.2(d)(5). Therefore, the [DMV] Hearing Officer should not have found that the petitioner willfully refused to submit to a chemical analysis of his breath."

The Commissioner appealed that decision to the Court of Appeals, arguing that the superior court failed to conduct the type of review mandated by statute, *see id.* § 20-16.2(e) ("superior court review shall be limited to whether there is sufficient evidence in the record to support the Commissioner's findings of fact and whether the conclusions of law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license"), that sufficient evidence in the record supports the hearing officer's findings of fact, and that those findings of fact in turn support the hearing officer's conclusion of law that petitioner willfully refused to submit to a chemical analysis test. The Court of Appeals agreed

that the superior court did not employ the correct standard of review and did "not explain which of the agency's fact findings were unsupported." *Brackett v. Thomas*, ___ N.C. App. ___, ___, 798 S.E.2d 778, 781 (2017).

Citing this Court's per curiam opinion in *Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjustment*, 355 N.C. 269, 559 S.E.2d 547 (2002), in which this Court reversed the decision of the Court of Appeals for the reasons stated in the dissenting opinion, including that "an appellate court's obligation to review a superior court order for errors of law . . . can be accomplished by addressing the dispositive issue(s) before the agency and the superior court without examining the scope of review utilized by the superior court," 146 N.C. App. 388, 392, 552 S.E.2d 265, 268 (2001) (Greene, J., dissenting) (internal citation omitted), the Court of Appeals stated it would "consider the issue under the applicable statutory standard of review, without remanding the case to the superior court." *Brackett*, ___ N.C. App. at ___, 798 S.E.2d at 781. But, the Court of Appeals then utilized the same flawed analysis that it identified in the superior court's review, namely: considering whether *the evidence in the record* supported the hearing officer's conclusion of law that petitioner willfully refused a chemical analysis,[2] rather than determining whether *the uncontested findings of fact*

---

[2] Petitioner may have contributed to the confusion experienced by the reviewing courts in this matter by suggesting in his original petition for judicial review in the superior court that the willful refusal "conclusion is not sustained by the evidence presented." Petitioner has continued to make this argument in his briefs to the Court of Appeals and this Court.

supported the hearing officer's legal conclusion that petitioner willfully refused a chemical analysis.[3]

The General Assembly has explicitly directed that for a driver's license revocation based upon a person's refusal to submit to a chemical analysis, "[t]he superior court review shall be limited to whether there is sufficient evidence in the record to support the Commissioner's findings of fact and whether the conclusions of law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license." N.C.G.S. § 20-16.2(e). Factual findings that are supported by evidence are conclusive, "even though the evidence might sustain findings to the contrary." *Seders v. Powell*, 298 N.C. 453, 460-61, 259 S.E.2d 544, 549 (1979) (citations omitted). It is the role of the agency, rather than a reviewing court, "to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence." *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 300 N.C.

---

[3] Although not directly pertinent to the matter before this Court, we observe that the Court of Appeals also erred in undertaking an analysis of the hearing officer's first four conclusions of law—whether petitioner was charged with an implied-consent offense, whether Officer Kinney had reasonable grounds to believe petitioner had committed an implied-consent offense, whether the implied-consent offense charged involved death or critical injury, and whether petitioner was notified of his rights—even though, in seeking judicial review in the superior court, petitioner challenged only the conclusion that he willfully refused chemical analysis. Further, in that analysis, the Court of Appeals stated that it considered whether "substantial" evidence supported the hearing officer's factual findings, rather than the proper standard under N.C.G.S. § 20-16.2(e) of whether "sufficient" evidence in the record supports challenged findings of fact. *See Brackett*, ___ N.C. App. at ___, 798 S.E.2d at 781.

381, 406, 269 S.E.2d 547, 565 (1980) (citations omitted); *see also Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 202, 593 S.E.2d 764, 771 (2004). In the present case, the Court of Appeals engaged in the prohibited exercises of reweighing evidence and making witness credibility determinations, essentially making its own findings of fact in several areas where evidence presented to the hearing officer was conflicting.

As previously noted, unchallenged findings of fact are binding on appeal; therefore, the only question for the Court of Appeals was whether the hearing officer's findings of fact supported the legal conclusion that petitioner willfully refused chemical analysis. As the court acknowledged in its opinion,

> Officer Kinney testified that: (1) he instructed Petitioner on how to provide a valid sample of breath for testing; (2) Petitioner failed to follow the officer's instructions on the first Intoximeter test, as the pressure gauge on the instrument did not indicate that air was being breathed by Petitioner; (3) Officer Kinney provided Petitioner a second opportunity to provide an air sample; and (4) contrary to Officer Kinney's instructions, Petitioner finished blowing before being told to stop and then followed up with another puff of air.
>
> Petitioner urges us to affirm the superior court's decision and asserts the admitted evidence in the record shows: (1) the results of Petitioner's second Intoximeter test registered "mouth alcohol;" (2) the operating manual and procedures for the EC/IR II Intoximeter requires that if the machine detects "mouth alcohol," then a subsequent test should be administered after a 15-minute observation period; (3) Petitioner testified that he blew as long and hard as he could into the Intoximeter; (4) Petitioner

testified he told the arresting officer before being administered the Intoximeter that he suffered from asthma.

*Brackett*, ___ N.C. App. at ___, 798 S.E.2d at 783. With these observations, the Court of Appeals recognized that petitioner had asked that court and the superior court to (1) make witness credibility determinations about Officer Kinney and petitioner concerning their conflicting accounts whether petitioner followed the officer's direction to blow without stopping in order to give a valid breath sample, (2) evaluate evidence from the operating manual and procedures for the EC/IR II Intoximeter about which the hearing officer made no findings, and (3) weigh those factual determinations to decide whether they support a legal conclusion of willful refusal by petitioner to submit to a chemical analysis. The court's opinion then states:

> Here, the findings of fact show and it is undisputed that when Petitioner blew a second time, the Intoximeter registered "mouth alcohol" as the result of the sample. The arresting officer asserted Petitioner failed to follow instructions by blowing insufficiently into the machine and he marked it as a willful refusal. *Rather than indicating Petitioner blew insufficiently to provide a sample on his second attempt, Petitioner provided an adequate sample for the Intoximeter to read and register "mouth alcohol". The arresting officer's testimony that Petitioner blew insufficiently is directly contradicted by the Intoximeter's registering a sample with a "mouth alcohol" test result.*
>
> Respondent did not produce any evidence to demonstrate the EC/IR II Intoximeter will produce a "mouth alcohol" reading if the test subject fails to submit a sufficient sample. The undisputed evidence shows *the EC/IR II Intoximeter registered "mouth alcohol" and did*

> *not indicate an inadequate sample or refusal from Petitioner's failure to blow sufficiently.*
>
> *Officer Kinney's testimony asserting Petitioner willfully refused is contradicted by the machine's acceptance of Petitioner's sample. The indicated procedure to follow from this result of "mouth alcohol" is for a subsequent EC/IR II Intoximeter test to be administered after a 15-minute observation period elapses.* This procedure was not followed here. The DMV Hearing Officer's conclusion that "[Petitioner] willfully refused to submit to a chemical analysis" is not supported by the record evidence or the findings.

*Id.* at ___, 798 S.E.2d at 784 (emphases added).

Thus, instead of rejecting petitioner's request to invade the province of the fact-finder in this case—the hearing officer—and correctly focusing solely on whether the unchallenged findings of fact support the conclusion of law of a willful refusal, the Court of Appeals first impermissibly reviewed the record evidence to make new factual determinations about, *inter alia*, the meaning of a "mouth alcohol" reading on the Intoximeter, the adequacy of a breath sample, and the procedures to be followed when a "mouth alcohol" reading is produced. Thereupon, the appellate court improperly determined the weight that such a reading should be given in determining whether an adequate breath sample has been produced and resolved contradictions in the evidence regarding whether petitioner followed Officer Kinney's directions. These unnecessary and superfluous steps by the Court of Appeals constitute error.

To properly review the hearing officer's determination of a willful refusal to submit to a chemical analysis test by petitioner, we must determine whether that conclusion of law is supported by the following findings of fact pertinent to that issue:

12.    Officer Brent Kinney explained and demonstrated how to provide a sufficient sample of air for the test.

13.    Officer Brent Kinney requested the petitioner submit to the test at 10:49 [p.m.]  The petitioner did not take a deep breath as instructed and faked blowing as the instrument gave no tone and the [gauge] did not move, indicating no air was being introduced.

14.    Officer Brent Kinney warned the petitioner that he must blow as instructed or it would be determined he was refusing the test and explained again how to provide a sufficient sample.

15.    The petitioner made a second attempt to submit to the test. This time he did take a breath but then gave a strong puff and then stopped; and then gave a second strong puff and stopped.

16.    The petitioner's second attempt concluded at 10:50 [p.m.] at which time Officer Brent Kinney determined he was refusing the test by failing to follow his instructions and marked the refusal at that time.

17.    The petitioner's second attempt resulted in a detection of mouth alcohol.  With that, Officer Brent Kinney had to reset the instrument, not to provide another opportunity for the petitioner to take the test, but to enter the refusal into the instrument.

18.    In spite of the test ticket recording the refusal at 10:56 [p.m.], the DHHS 4081 indicates the refusal was actually at 10:50 [p.m.]

19.   The doctor's note indicates the petitioner's asthma appears to be stabilized with medication and anxiety disorder is managed by Xanax.

These factual findings indicate that petitioner was instructed on how to provide a sufficient breath sample, did not follow the instructions on the first blow, was warned that failing to follow the instructions on providing a sufficient breath sample would constitute a refusal, was re-instructed on providing a sufficient breath sample, failed again to follow the instructions during the second blow, was then recorded as refusing to submit to a chemical analysis on the basis of his failure to follow instructions, had a breathing condition that his doctor indicated was "stabilized with medication," and was ultimately marked as willfully refusing to submit to a chemical analysis based upon his failure to follow Officer Kinney's repeated instructions despite being warned.  Based on these unchallenged facts, we hold that the repeated failure to follow the chemical analyst's instructions on how to provide a sufficient breath sample, after being warned that a refusal to comply would be recorded if such failure continues, constitutes willful refusal to submit to a chemical analysis.

Section 20-16.2 has consistently included the phrase "willful refusal" to submit to a chemical analysis as a basis for revocation of one's driving privileges over the course of its original enactment and numerous amendments spanning more than five decades.  This Court has held that, as provided in N.C.G.S. § 20-16.2, "*refusal* is defined as 'the declination of a request or demand, or the omission to comply with some requirement of law, as the result of a positive intention to disobey.' " *Joyner v.*

*Garrett*, 279 N.C. 226, 233, 182 S.E.2d 553, 558 (1971) (quoting *refusal*, *Black's Law Dictionary* (4th ed. 1951)).  For such a refusal to be willful, the driver's actions must reflect "a conscious choice purposefully made."  *Seders*, 298 N.C. at 461, 259 S.E.2d at 550; *see also Etheridge v. Peters*, 301 N.C. 76, 81, 269 S.E.2d 133, 136 (1980) (citing *Seders* for the same proposition).  Our discussion of the driver's willful refusal in *Seders* is illustrative of the enunciated principle.

In *Seders* the driver was informed of his right to consult an attorney but was also warned that, in any event, testing could be delayed for no longer than thirty minutes.  298 N.C. at 461, 259 S.E.2d at 549; *see* N.C.G.S. § 20-16.2(a)(6) (2017) (stating that a driver must be informed of his right to "call an attorney for advice . . . , but the testing may not be delayed for [this] purpose[ ] longer than 30 minutes from the time you are notified of these rights.  You must take the test at the end of 30 minutes even if you have not contacted an attorney . . . .").  The chemical analyst in *Seders*, who was also a North Carolina state trooper,

> warned [the driver] on three occasions that his time was running out and told [the driver] how many minutes he had remaining.  The trooper also stated that he told [the driver] that the test could not be delayed for more than 30 minutes and that if [the driver] did not take the test within that time it would be noted as a refusal.

*Id.* at 461, 259 S.E.2d at 549.  This Court observed that the driver "was told the consequences of his failure to submit to the test within the 30 minute time limitation yet still elected to run the risk of awaiting his attorney's call," and held that the

driver's "action constituted a *conscious choice purposefully made* and his omission to comply with this requirement of our motor vehicle law amounts to a willful refusal." *Id.* at 461, 259 S.E.2d at 549 (emphasis added) (citations omitted).

Both the driver in *Seders* and petitioner in the instant case were instructed repeatedly about the process of submitting to a valid chemical analysis. In *Seders*, the instruction at issue was the requirement that the chemical analysis test be implemented no longer than thirty minutes from the time that a vehicle operator is informed of his or her rights to consult an attorney regarding the test. In the case at bar, the instruction at issue is the proper method by which to provide a breath sample sufficient for a chemical analysis. Both the driver in *Seders* and petitioner here were warned that continued failure to comply with instructions repeatedly given by law enforcement officers would result in a determination of a willful refusal to submit to a chemical analysis. Despite these warnings, both the driver in *Seders* and petitioner here remained noncompliant with the pertinent instructions, "action[s] constitut[ing] a conscious choice purposefully made" not to submit to chemical testing. *See id.* at 461, 259 S.E.2d at 550. Petitioner here was instructed about how to produce a sufficient breath sample, but he instead chose to give an initial "faked" blow and then a "puff-stop-puff-stop," both of which were insufficient for analysis. A motor vehicle operator who intentionally and repeatedly fails to follow the instructions that have been explained in order for a chemical analysis to be performed, therefore thwarting

the execution of the test, commits willful refusal to submit to a chemical analysis under N.C.G.S. § 20-16.2.

The superior court and the Court of Appeals both employed an incorrect standard of review and thus erred in reversing the administrative decision of the DMV hearing officer revoking petitioner's operator's license. Accordingly, the Court of Appeals decision is reversed and this matter is remanded to that court for further remand to the superior court with instructions to reinstate the order of the DMV dated 7 January 2016.

REVERSED AND REMANDED.