IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-185

Filed: 15 December 2020

Mecklenburg County, No. 19 CVS 14591

STATE OF NORTH CAROLINA EX REL. NORTH CAROLINA DEPARTMENT OF COMMERCE, DIVISION OF EMPLOYMENT SECURITY, Appellee

v.

ACES UP EXPO SOLUTIONS, LLC, Appellant

Appeal by Appellant from an Order entered 9 October 2019 by Judge Donnie Hoover in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 October 2020.

*Timothy M. Melton, for appellee North Carolina Department of Commerce, Division of Employment Security.*

*The Law Office of Mark N. Kerkhoff, PLLC, by Mark N. Kerkhoff, for appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Aces Up Expo Solutions, LLC (Appellant) appeals from an Order affirming the North Carolina Department of Commerce Board of Review's decision concluding the Department's Employment Security Division (the Division) correctly issued a Tax

Assessment and Demand for Payment to Appellant for unemployment taxes owed on Appellant's employee payroll. The Record before us reflects the following:

Appellant is a business, owned by Dennis Scott Foshie (Foshie), that provides labor crews to construct and take down trade show booths and displays in North Carolina and other states. The Division is responsible for administering North Carolina's Employment Security Act, codified in Chapter 96 of the North Carolina General Statutes, pursuant to state and federal law. In 2014, the Division received a complaint that Appellant had misclassified its workers as independent contractors and not as employees. As such, Appellant was allegedly not paying unemployment security taxes that fund the state's unemployment benefits programs. Based on this complaint, the Division began investigating Appellant's account. The Division's investigation concluded Appellant was an employer liable for unemployment insurance taxes. Accordingly, the Division sent Appellant invoices for each quarter of the years 2010 through 2014.

On 29 November 2016, the Division issued an Unemployment Tax Assessment and Demand for Payment (Tax Assessment) to Appellant for employer contributions, interest, and penalties for all of 2015 and the first three quarters of 2016. On 28 December 2016, Appellant filed a protest of the Tax Assessment asserting its workers were independent contractors and not employees covered under the Employment Security Act. In response to the protest, the Division conducted a review to determine

if it had correctly issued the Tax Assessment. That review concluded the Division had correctly issued the Tax Assessment to Appellant because Appellant's workers were employees and not independent contractors.

Appellant appealed the Division's determination to the North Carolina Department of Commerce Board of Review (the Board). The Board held a telephonic hearing pursuant to N.C. Gen. Stat. § 96-4(q). Present at this hearing were: Sheena Cobrand, the Board's hearing officer; Appellant's attorney; Foshie; the Division attorney; Division investigator Lisa Ramsey; Division witness Bruce Milazzo, owner of a business in competition with Appellant; and Division witness Brandon Page, an insurance agent. Both sides presented evidence including witness testimony, affidavits, and other exhibits.

On 28 May 2019, the Board issued a Tax Opinion affirming the Division's Tax Assessment issued to Appellant. Included in the Board's Tax Opinion were the following relevant Findings of Fact:

> 2. During the course of the underground economy investigation, Lyles provided Foshie with an Employer's Statement Questionnaire ("ESQ") to be completed on behalf of the employer.
>
> 3. In the ESQ, Foshie acknowledged: (1) that the nature of the services rendered by his business include laying carpet, setting up tables, preparing booths for trade shows, general tools, and stages; (2) that workers do not advertise their services; (3) that workers do not have federal employer identification numbers; (4) that licenses or permits for this type of work is not applicable; (5) that he provided on-the-job training for some workers, including teaching them the tools of the trade; (6) that payment is set based

on a 10-hour workday; (7) that workers are reimbursed for hotel expenses; (8) that he tells the workers what is to be done; (9) that he tells the workers how to do the work; (10) that he can discharge workers for doing the work another way; (11) that workers don't specifically report to anyone while work is being done, but talks to him if problems arise; (12) that there are no contracts with workers; and (13) that he carries workers' compensation insurance on the workers, and that the workers do not carry insurance. Foshie signed the ESQ on October 16, 2014, acknowledging that his responses were true, accurate, and complete.

. . . .

9. RTM Lisa Ramsey was assigned to review and determine whether the Tax Assessment was properly issued. Ramsey provided another ESQ to Foshie to be completed on behalf of the employer. On May 4, 2017, Attorney Kerkhoff submitted responses to the ESQ that Ramsey provided to Foshie. Foshie acknowledged that his typed name on the document signifies his signature, and that the responses provided in this ESQ were also true, accurate, and complete.

10. Upon completing her protest assignment, Ramsey submitted written findings. In her findings, Ramsey concluded that the workers listed in the employer's 2015 and 2016 quarterly tax and wage reports were employees of the employer, and not independent contractors. Ramsey specifically noted discrepancies in the two ESQ responses given by Foshie.

. . . .

12. The employer does not maintain a brick and mortar building or office specifically for its business. Some crew members are residents of North Carolina, while others reside in other states. Crew members travel directly from their homes to the project trade show job sites. Job sites include fairgrounds, convention centers, and racetracks.

13. The process of providing a crew for a specific project is as follows: The decorators/contractors contact the employer with requests for specific individuals and/or a specific number of workers to provide trade show labor. The employer contacts the requested individuals and other workers to provide the labor needed for specific trade shows.

14. Crew members perform work in four main categories, including professional riggers/commercial signage crews operating aerial platform lifts and scissor lifts; forklift operators; construction/deconstruction crews; and tradeshow design/decorator outfit crews.

15. Foshie contacts workers to meet a decorator's stated needs and directs the workers to the specific location of the work to be completed for the trade show. He also instructs them on when to report for work, as well as to whom they should report. Workers are instructed to report to the on-site crew leader, and to follow instructions provided by the crew leader or decorator. If problems arise, workers are directed to contact Foshie for solutions.

16. Foshie travels to trade shows after dispatching his workers to ensure that displays are set up correctly and that the work performed by his workers is satisfactory to the customer decorator. Foshie also had the right to discharge workers. The employer's business operation and procedures have remained the same since employer's inception.

17. The employer's business relies on its workers to continue operating, and would have to shut down if the workers were treated as employees. Most of the employer's workers perform work as part of a constructing and deconstructing crew, or design/decorator outfit crew, and did not require licenses, certificates, or specialized training.

18. Workers cannot enter facilities to perform their job duties without insurance coverage provided by the employer.

19. The employer signed and submitted applications for insurance coverage for its business and workers. The employer's insurance policies cover the employer's workers for on-the-job injuries.

20. The employer carries general liability and workers' compensation insurance on all its workers. The employer carried general liability insurance policies during calendar years 2015, 2016, and 2017. The employer also carried workers' compensation insurance for its workers during calendar years 2015, 2016, and 2017.

21. The insurance policy issued to the employer from State Auto Insurance Companies under policy number BOP 2664234 02 for the period January 8, 2014 to January 8, 2015 provides insurance coverage for some of the employer's equipment and tools.

22. The insurance policy issued to the employer from Erie Insurance under policy number Q25 0820945 CH for the period January 8, 2014 to January 8, 2015 provided insurance coverage for four full-time employees. Coverage was based on information provided by Foshie to his agent.

. . . .

24. The employer's commercial general liability application with Erie Insurance for the policy effective date of June 15, 2015 specifically states that the employer had no subcontractors, and does not act as a general contractor.

25. The Employment Practices Liability coverage issued to the employer from Liberty Mutual Insurance under policy number BKS (17) 57 37 95 97 for the period July 7, 2016 to July 7, 2017 sets a premium and provides coverage for eight employees.

26. Prior to issuing the workers' compensation policy, Page explained to the employer that workers' compensation insurance was not required on two or less employees.

. . . .

28. Foshie determines the hourly rate of compensation for the workers. Workers are paid for overtime hours. The employer also maintains payroll for all its workers. The employer also pays for the workers' travel and lodging expenses when overnight stays are necessary.

29. With the exception of one company, Wide Ark Services, Inc. ("Wide Ark") , the employer's workers are individuals, and do not have their own businesses. One of the employer's workers was homeless and sleeping in her car while when she performed work for the employer. One worker was paid $12.00 per hour. Another worker performed additional services for the employer.

. . . .

31. The employer's other workers, who are all individuals, do not have any written contracts with the employer. Some of those workers perform the same type of work for other companies in the same line of work as the employer. The workers do not submit bids for jobs to the employer. The workers do not submit written invoices for their services to the employer. The workers are paid directly by the employer, and payment is made in the individuals' names. Requests for raises in the amount of hourly pay for a worker must be made to Foshie. Foshie can fire workers.

32. The employers' workers do not carry liability insurance or workers' compensation insurance. Foshie has never asked the workers if they had their own businesses. He has also never requested certificates of insurance from the workers. The individual workers do not advertise for their services, or have federal employer identification numbers.

The Board annotated its Findings with sixty-seven footnotes referencing the hearing transcripts, affidavits, exhibits, and other evidence adduced at the hearing.

The Board's Opinion also included a section setting out the applicable law. This section explained that N.C. Gen. Stat. § 96-1(b)(10) defers to federal law which

defines "employee" as: "any individual who, under the common law rules applicable in determining the employer-employee relationship, has the status of an employee . . . ."[1]  Further, the Board noted Sections 96-1(11)-(12) defer to the federal definition of employer as: "any person who during a calendar year . . . paid wages of $1,500 or more, or . . . employed at least one individual . . . ."[2]  Because Appellant's appeal centered around the Division's conclusion Appellant's workers were "employees," the Board saw it necessary to examine North Carolina's common law rules used to determine if a worker is an independent contractor.

The Board's Tax Opinion relied on *Hayes v. Bd. of Trustees of Elon College*, which sets out the common law factors for determining whether a worker is an independent contractor.  224 N.C. 11, 29 S.E.2d 137 (1944).  Citing *Hayes*, the Board identified those factors including that an independent contractor:

(a)     Is engaged in an independent business, calling or occupation;
(b)     Is to have the independent use of his special skill, knowledge or training in the execution of the work;
(c)     Is doing a specified piece of work at a fixed price or a lump sum upon a quantitative basis;
(d)     Is not subject to discharge because he adopts one method of work rather than another;
(e)     Is not in the regular employ of the other contracting party;
(f)     Is free to use such assistants as he may think proper;
(g)     Has full control over such assistants;
(h)     Selects his own time.

---

[1] 26 U.S.C. § 3121(d).
[2] 26 U.S.C. § 3306(a).

Also citing *Hayes*, the Board noted, "the employer's retention of the right to control and direct the manner in which the details of the work are to be executed and what the laborers will do as the work progresses is decisive."

Applying the *Hayes* factors, the Board observed from the evidence: Appellant's "workers were not engaged in independent businesses, callings or occupations . . . performed part-time work for the employer[,]" and that no profit or loss could be realized by the workers; the workers could complete their tasks after general direction and without "specialized skills" requiring "formal training[;]" workers did not "do a specified piece of work at a fixed price . . . [Appellant] set the pay rate and signed the relevant pay checks"—workers were paid on an hourly basis and did not bill Appellant; workers were subject to discharge for adopting one method of work over another, but it was not necessary for Foshie to be present because of the nature of the work; Foshie established and communicated expectations to the workers and required them to report to specific places, at specific times, to specific people; workers did not use assistants and had no supervisory authority over any other worker; and, workers could not "select [their own] work hours"—Appellant required certain "commitment minimums" and workers were paid overtime. Accordingly, the Board affirmed the Division's Tax Assessment and found Appellant was liable for unemployment insurance contributions.

On 12 June 2019, Appellant filed exceptions to the Tax Opinion.  The Board overruled Appellant's exceptions on 19 June 2019.  Appellant petitioned for judicial review in Mecklenburg County Superior Court on 27 June 2019.  The Mecklenburg County Superior Court heard Appellant's case on 7 October 2019.  After hearing "the arguments presented, review[ing] the applicable case and statutory law, examin[ing] the record on appeal, and review[ing] the evidence[,]" the Superior Court filed its Order Affirming Administrative Decision (Order) on 9 October 2019.  In its Order, the Superior Court concluded the Board was responsible for "determining the weight and sufficiency of the evidence . . . and resolving conflicting and circumstantial evidence."  The Superior Court found there was "competent evidence in the record to support the Board of Review's findings of fact[.]".  Moreover, the Superior Court concluded: "It appears from the record that the Board of Review considered and applied the common law factors set forth in *Hayes v. Bd. of Trustees of Elon College*, . . . in determining that Appellant's workers were employees . . . ."  As such, the Superior Court concluded "the Board of Review correctly applied the common law factors to its findings of fact in concluding that Appellant's workers were employees of Appellant."  Finally, the Superior Court determined the Board considered, interpreted, and correctly applied North Carolina's Employment Security Law in this case.  Accordingly, the Superior Court affirmed the Board's Tax Opinion.  The Superior Court's 9 October 2019 Order was not served on Appellant until 18

November 2019. Thus, Appellant timely filed its written Notice of Appeal to this Court on 16 December 2019.

## Issues

The dispositive issues in this case are whether the Superior Court properly concluded: (I) the Board's Findings of Fact were supported by competent evidence; and (II) the Board properly applied the law in determining Appellant was an employer liable for unemployment taxes under North Carolina's Employment Security Law.

## Standard of Review

Generally, final agency decisions are subject to judicial review pursuant to North Carolina's Administrative Procedure Act found in Chapter 150B of the General Statutes. N.C. Gen. Stat. § 150B-1 (2019). However, "Department of Commerce hearings and appeals authorized under Chapter 96" are exempt from Chapter 150B's contested case provisions. *Id.* § 150B-1(e)(20).

N.C. Gen. Stat. § 96-4(q) provides, "[t]he Board of Review . . . shall have the right and power to hold and conduct hearings for the purpose of determining the rights, status and liabilities of an employer" and "the power and authority to determine any and all questions and issues of fact or questions of law that may arise under the Employment Security Law" affecting the rights, liabilities, and status of an employer including the right to determine the amount of contributions an

employer owes to the Division. N.C. Gen. Stat. § 96-4(q) (2019). A "decision or determination of the Board of Review upon such review in the Superior Court shall be conclusive and binding as to all questions of fact supported by any competent evidence." *Id.* Our standard of review is the same as the Superior Court's review of the Board's decision: "whether the facts found by the [Board] are supported by competent evidence and, if so, whether the findings support the conclusions of law." *Reeves v. Yellow Transp.*, Inc., 170 N.C. App. 610, 614, 613 S.E.2d 350, 354 (2005) (citations and quotation marks omitted). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *In re Adams*, 204 N.C. App. 318, 321, 693 S.E.2d 705, 708 (2010) (citation and quotation marks omitted). Moreover, the Board's findings are conclusive "even though the evidence might sustain findings to the contrary." *Brackett v. Thomas*, 371 N.C. 121, 126, 814 S.E.2d 86, 89 (2018) (citation and quotation marks omitted).

## **Analysis**

### I. Findings of Fact

Appellant argues the Superior Court erred in concluding the Board's Findings of Fact were supported by competent evidence. The Superior Court concluded the Board did not err in "determining the weight and sufficiency of the evidence" and that there was competent evidence to support the Board's Findings. Therefore, we review the Board's Findings to determine whether the Record contained *any* competent

evidence to support those Findings. N.C. Gen. Stat. § 96-4(q) (2019); *see also Reeves*, 170 N.C. App. at 614, 613 S.E.2d at 354.

Specifically, Appellant argues the following Findings were not supported by competent evidence: (A) Appellant controls the manner in which its workers complete the work and can discharge workers for adopting a different method; (B) workers did not have independent use of special skills, knowledge, or licenses; (C) workers were in Appellant's regular employ; (D) Appellant must have provided tools and equipment to its workers because Appellant maintained insurance for tools; and (E) workers did not perform a specified piece of work, make a profit or loss, or negotiate and set their own pay.

## A. Control of the manner of work and ability to discharge workers

Appellant contends testimony at the hearing contradicts the Board's conclusion Appellant controlled the method of work and retained the authority to discharge workers. It is true there is some evidence in the Record to support Appellant's position. For example, Foshie testified he would not go to tradeshows to direct or manage the work crews. Foshie testified he "might come in after" to ensure the clients were satisfied with the product. Further, when asked whether a worker could be discharged for adopting one method of work or another, Foshie responded: "No. That is not my concern. . . . the only thing I'm concerned about is the outcome

of it." Sworn affidavits from some workers also tend to corroborate Foshie's assertion workers could not be fired in the middle of a job.

However, there is also evidence in the Record to support the Board's Findings. *See Brackett*, 371 N.C. at 126, 814 S.E.2d at 89. As part of the Division's investigation, Foshie responded to and signed an Employment Security Questionnaire stating he tells workers what to do, how to do it, and could discharge workers as he sees fit. Moreover, the Record contains other questionnaires from workers who stated they felt as if they were employees and could not complete jobs in any way they saw fit. Thus, there is evidence in the Record to support the Board's Findings.

### B. Workers' use of independent knowledge, skill, or licenses

Appellant further contends Foshie's testimony at trial contradicts the Board's Finding workers did not have use of independent knowledge, skill, or licenses in completing the work. Foshie testified workers could not "come in off the street" and complete the tasks required. Moreover, certain tasks and trades—rigging and forklift operation—required licensure and certification. Foshie testified even the "construct and deconstruct" crews, without any special licenses or certifications, required "talent" to complete the jobs assigned them.

However, the Record also contains evidence some workers did not use independent or special knowledge, skill, or licenses to complete their work. In

Foshie's first signed ESQ, he answered "N/A" to the question asking if workers had licenses or permits and "must be able to work" to the question as to whether workers had independent use of special skills, knowledge, or training. Moreover, at least three workers answered the same questions in the negative. These workers also stated Foshie and other "bosses" showed them how to complete their tasks. Thus, again, there is evidence in the Record supporting the Board's Finding.

*C. Workers were in Appellant's regular employ*

Appellant argues the Board "grasped" to find Appellant's workers were in Appellant's regular employ. Appellant highlights the Board's citation to evidence one worker "performed additional services [outside of the tradeshow setting] for the employer." Moreover, Appellant argues work is performed on a temporary and sporadic basis and workers do not work for Appellant outside of the tradeshow setting.

However, the Board's Finding is supported with substantial other evidence Appellant does not mention. The Board acknowledged workers did not have written contracts with Appellant, but Appellant "communicated its expectations to workers and required workers to report to jobs at a specific time, place, and person." The Board stated, although the work was done on a part-time basis, workers were regularly employed by Appellant when available. Moreover, the Board pointed to evidence Appellant's clients did not seek out any of these workers individually and

always contacted Appellant to provide crews. The Board also cited Appellant's general liability and workers' compensation policies for four to eight "employees." Thus, we conclude the Board's Finding is supported by evidence in the Record.

*D. Providing tools and equipment for workers*

Appellant further submits the Board's Finding Appellant provided tools for workers was not supported by competent evidence. Again, Appellant posits the Board "grasped" at evidence of Appellant's tool insurance policy to infer Appellant provided tools to its workers. Appellant points to "overwhelming" evidence—in workers' statements and affidavits—workers provided their own tools. According to Appellant, the Board made an impermissible inference based solely on the insurance policy.

The specific Finding challenged by Appellant was actually part of the Board's broader Finding the workers were not engaged in their own independent business and that workers did not independently use their own special knowledge or skill on jobs. However, the Board in its Finding, acknowledged Appellant's workers supplied their own tools, while also inferring Appellant provided at least some tools based on Appellant's purchase of insurance coverage for tools. Even if this particular inference was improper, the mere fact workers, as found by the Board, provided their own hand tools, would not in and of itself be determinative under *Hayes*. *See Hayes*, 224 N.C. at 16, 29 S.E.2d at 140 ("The presence of no particular one of these indicia is controlling.").

Moreover, the broader Finding that workers were not engaged in their own businesses was supported by competent evidence. When asked whether he could name any of the individual workers' businesses, Foshie responded: "They don't have, most of these guys don't have names of businesses." Moreover, some of the workers—through questionnaires and affidavits—stated they did not have federal employee identification numbers, and one stated, "I felt like an employee. I wasn't my own boss . . . ."

*E. Performing a specified piece of work; Profit or Loss; Setting Pay*

Finally, Appellant contends the Board's Findings workers were not paid for performing a specified piece of work, did not realize a profit or loss, and did not set their own pay were not supported by competent evidence. Appellant notes the citations the Tax Opinion used to support these Findings merely point to evidence workers preferred "flat bid" jobs and that Appellant would negotiate pay rates on the workers' behalf.

However, Foshie testified he paid the workers overtime for periods of work over eight hours in a twenty-four-hour period, and travel expenses including hotel rooms. Moreover, multiple worker affidavits—even those stating the workers considered themselves contractors—stated most jobs were paid on an hourly basis. In fact, Foshie testified workers merely preferred the flat bid jobs because the workers could get jobs done quickly regardless of the money paid. The Record also indicates

Appellant paid workers for extraneous travel expenses and overtime. Moreover, even where workers objected to pay rates on particular jobs, Appellant negotiated the pay rate with its clients. Thus, the Record supports the Board's Findings Appellant's workers did not perform a specified piece of work, realize profit or loss, and were not able to set their own pay.

At best, Appellant establishes there was conflicting evidence on all these Findings. However, it was the Board's duty to resolve these conflicts in the evidence. *See Brackett*, 371 N.C. at 126, 814 S.E.2d at 89. As discussed, the Record does contain competent evidence to support the Board's Findings. Thus, the Superior Court did not err in determining the Board's Findings were supported by competent evidence.

## II. Application of the *Hayes* Factors

Appellant further contends the Superior Court erred in concluding the Board correctly applied the law in applying the *Hayes* factors and in concluding Appellant's workers were employees; and, therefore, Appellant was liable for employment security contributions.

As noted above, our Supreme Court laid out the determinative common law factors in *Hayes*. According to the *Hayes* Court, an independent contractor is one who:

(a)     is engaged in an independent business, calling, or occupation;
(b)     is to have the independent use of his special skill, knowledge, or training in the execution of the work;

(c)     is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis;

(d)     is not subject to discharge because he adopts one method of doing work rather than another;

(e)     is not in the regular employ of the other contracting party;

(f)     is free to use such assistants as he may think proper;

(g)     has full control over such assistants; and

(h)     selects his own time.

*See Hayes*, 224 N.C. at 16, 29 S.E.2d at 140. "[N]o particular one of these indicia is controlling. Nor is the presence of all required. They are considered along with all other circumstances to determine whether in fact there exists in the one employed that degree of independence necessary to require his classification as independent contractor rather than employee." *Id.* The parties in this case agree the *Hayes* factors and analysis applies to these proceedings before the Board.

Here, the Board made Findings of Fact supporting conclusions Appellant's workers were not independent contractors based on each of the *Hayes* factors.[3] Accordingly, the Board concluded, as a matter of law, the Division correctly issued the Tax Assessment to Appellant, and Appellant was an employer liable for unemployment insurance contributions.

However, Appellant specifically argues the Superior Court erred in determining the Board correctly applied the law when it concluded: (A) workers were

---

[3] Appellant contends the Division erroneously requires that each of the *Hayes* factors be established before an entity may be deemed an independent contractor. However, our review of the Record indicates the Board itself did not apply such a requirement, and instead merely weighed the evidence presented on each factor.

not engaged in an independent calling; (B) workers were in Appellant's regular employ; (C) workers did not select their own time under *Hayes*; and (D) Appellant exercised the right to control the manner and details of the work performed.

*A. Independent Calling*

Appellant argues the Division misapplied the law by concluding workers were not engaged in an independent calling or business because the Division ignored the fact that workers were sole proprietors.

The Board supported its conclusion by finding workers did not have their own businesses, did not advertise their services, did not carry their own insurance, and did not have federal employer identification numbers. Appellant cites *McCown v. Hines* to support its contention the law does not require such formalities in order to be a sole proprietor; and, thus, an independent contractor. 353 N.C. 683, 549 S.E.2d 175 (2001). Although the *McCown* Court held a roofer, hired by an individual to repair a roof, did not need all these formalities to be a sole proprietor and independent contractor, the Court explained this was because the roofer was hired for his *expertise* as a roofer. *Id.* at 687, 549 S.E.2d at 178. In fact, the cases Appellant cites holding workers were engaged in independent callings each involved workers who had expertise in, or licenses or certifications for, particular professions. *See, e.g.*, *Hayes*, 224 N.C. 11, 29 S.E.2d 137 (skilled electricians); *McCown*, 353 N.C. 683, 549 S.E.2d 175 (a person hired specifically for his expertise in roofing); *Rhoney v. Fele*, 134 N.C.

App. 614, 518 S.E.2d 536 (1999) (a registered nurse); *Gordon v. Garner*, 127 N.C. App. 649, 493 S.E.2d 58 (1997) (a truck driver with a commercial driver's license).

Here, however, as the Board noted, Appellant's workers were not licensed and had no particular expertise. Further, the Board found, "workers were not engaged in independent businesses, callings or occupations . . . performed part-time work for the employer[,]" and that no profit or loss could be realized by the workers. Moreover, the workers could complete their tasks after general direction and without "specialized skills" requiring "formal training." Indeed, in one affidavit a worker described himself as a "jack of many trades." Accordingly, the Board's Findings supported its conclusion workers were not engaged in an independent calling or business.

*B. Regular Employ*

Appellant further contends the Record reflects the work done by its workers was "sporadic" and, thus, the Division misapplied the law by concluding workers were in Appellant's regular employ.

In *Hayes*, electricians were hired to do an "extra" job outside of their regular employment with Duke Power. 224 N.C. at 18, 29 S.E.2d at 141. The electricians were free to decide when to do the work when they had time, but this sporadic work was a part of the one project on which they agreed to work. *Id.* Appellant cites our decision in *Rhoney v. Fele* for the proposition "sporadic" work done by a nurse—

*engaged in an independent calling*—coordinated by a nurse-finding agency did not satisfy the regular employment *Hayes* factor. 134 N.C. App. 614, 518 S.E.2d 536.

However, here, the Board did not characterize the work as "sporadic." The Board characterized the work as "part-time" and workers were employed when Appellant had work and the workers were available. Further, the Board found Appellant instructed the specific time, place, and person to which the workers were to report for work. Moreover, the nature of the work—unlike the specialized, licensed nursing or electrical work—was itself part-time and relatively unskilled, rather than sporadic work done by someone with an independent calling. *See, e.g., Hayes*, 224 N.C. at 18, 29 S.E.2d at 141 ("[workers] were skilled electricians[.]"; *Rhoney*, 134 N.C. App. at 618, 518 S.E.2d at 540 ("as a registered nurse, [the worker] was engaged in an independent profession[.]"). As the Board found: Appellant was not merely a "middleman" for an entity needing a specialized worker; Appellant hired workers to complete jobs it contracted with clients to complete. *See Rhoney*, 134 N.C. App. at 619, 518 S.E.2d at 540 ("Thus, Nursefinders' role was similar to that of a broker or other middleman."). Thus, the Board's Findings supported its conclusion workers were in Appellant's regular employ.

*C. Workers selecting their own time*

Next, Appellant argues the Division misapplied the law by concluding the workers could not set their own time for working because they were able to accept or reject jobs as they saw fit.

Again, the *Hayes* Court concluded the electricians were free to determine when to complete the contracted work—outside of their regular employment duties with Duke Power—when they had extra time to work. 224 N.C. at 18, 29 S.E.2d at 141. In this case, workers could accept or reject entire projects; however, if they accepted a project they had to report at a specific time and place and to specific people for work. Within that particular job, the workers could not set their own hours.

Appellant cites *Rhoney* for the proposition the ability to accept or reject a job tends to support an independent contractor status. *Rhoney*, 134 N.C. App. at 619, 518 S.E.2d at 540. However, the *Rhoney* court also stated the nurse's inability to set his or her time once the nurse accepted a particular job cut against an independent contractor status. *Id.* Here, the Board found Appellant's workers were free to reject or accept specific projects; however, once on a project, workers could not choose the hours they worked. Therefore, as in *Rhoney*, the facts in this case cut both ways.

Appellant also cites *Gordon v. Garner* where we held a commercial truck driver was an independent contractor where he was free to accept or reject any delivery but had no discretion as to what he did with the load once he accepted a delivery. 127 N.C. App. 649, 659, 493 S.E.2d 58, 64. However, again, the commercial truck driver

engaged in an independent calling and contracted for discrete deliveries with other businesses. Appellant's workers, unlike the truck driver in *Gordon*, agreed to work on multi-day projects, made up of numerous individual tasks. Accordingly, the Board's Findings supported its conclusion the workers could not set their own working times.

### D. Controlling the manner and details of work

Finally, Appellant argues the Division misapplied the law by concluding Appellant controlled the manner and details of the work when Appellant was not generally on site directing the work. Again, we disagree.

The *Hayes* Court held discussing specific details "before the work was begun . . . related to the general nature of the work" failed to show "the right to control the details of the work" sufficient to establish an employer-employee relationship. *Hayes*, 224 N.C. at 18, 29 S.E.2d at 142. Indeed, the *McCown* Court held the customer's direction that the roofer use certain mismatched shingles and where to place the shingles did not show the customer retained the right to control the manner and details of the work—the customer did not tell the roofer how many nails to put in each shingle or how far to overlap the shingles. *McCown*, 353 N.C. at 688, 549 S.E.2d at 178. Appellant contends, like these cases, it was only concerned with the end product and whether its clients were satisfied by the work.

However, the Board found—supported by affidavits and questionnaires, including one signed by Foshie—workers received on-the-job training as to how to do the work. Indeed, Foshie stated no person could "come in off the street" and do these jobs. Foshie, or someone employed by Appellant, gave at least some of the workers on-the-job training on how to do some of the work required. Unlike in *Hayes* and *McCown*, Appellant did exercise some control over how the work was done and not merely the end result. Therefore, the Board's Conclusion Appellant controlled the manner and details of the work was supported by its Findings.

Thus, we conclude the Board's Conclusions as challenged by Appellant are supported by the Board's Findings of Fact. Moreover, when considered along with the Board's additional Conclusions as to the remaining *Hayes* factors, the Board did not err in concluding Appellant's workers were employees and Appellant was liable for employment security contributions. Consequently, the Superior Court did not err in concluding the Board correctly applied the *Hayes* factors to the facts of this case.

## <u>Conclusion</u>

For the foregoing reasons, the Superior Court properly affirmed the Board's Tax Opinion. Accordingly, we, in turn, affirm the Superior Court's Order.

AFFIRMED.

Judges BRYANT and DIETZ concur.