IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-475

Filed 16 April 2025

McDowell County, No. 22CRS050912-580

STATE OF NORTH CAROLINA

v.

SOSHA NICOLE PETERS, Defendant.

Appeal by defendant from judgment entered 13 November 2023 by Judge Steve R. Warren in McDowell County Superior Court. Heard in the Court of Appeals 14 January 2025.

*Attorney General Joshua H. Stein, by Assistant Attorney General Christine Wright, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender John F. Carella, for defendant-appellant.*

DILLON, Chief Judge.

Defendant Sosha Nicole Peters was convicted of possession of methamphetamine discovered in her wallet by wildlife officers during a warrantless search. During the encounter, officers were in the process of searching Defendant's vehicle and retrieved and searched the inside of Defendant's wallet that she had placed on top of the vehicle, whereupon the officers found the methamphetamine inside the wallet. On appeal, Defendant argues that the trial court erred by denying

her motion to suppress the evidence found in her wallet during the search. We vacate and remand for further consideration.

## I.     Background

This matter involves an encounter between officers and Defendant during which the officers searched Defendant's vehicle and her wallet which was on top of her vehicle. Defendant was not charged for possession of anything found by the officers inside her vehicle, but only for the methamphetamine found inside her wallet.

The uncontradicted evidence and findings made by the trial court at Defendant's suppression hearing tended to show as follows: On 1 July 2022, two officers with the State of North Carolina Wildlife Resource Commission came in contact with Defendant and Tyrone Thomas, who were residing in a camp in the vicinity of Pisgah National Forest in McDowell County. During the encounter, one of the officers requested to see proof of identity and proof of ownership of the vehicle parked next to the tent where Defendant and Mr. Thomas were residing. Much of the encounter was caught on an officer's body camera.

Defendant walked to the car, opened the passenger door, retrieved both her wallet and the vehicle title, retrieved her identification from her wallet, and handed her identification and vehicle title showing her as the vehicle owner to the officer. The officers acknowledged Defendant as the owner of the vehicle. There were several needles in the vehicle. Defendant provided the officer with a card that allowed her access to the needles that she received from a medical center. Mr. Thomas explained

to the officer that they had only had the vehicle for two days and he had been driving it, as Defendant did not have a current license.

After checking the identity of both Defendant and Mr. Thomas, the officer went back to speak with them. The officer asked them if there was "anything in the car [he] might need to know about." Defendant responded, "No sir.

The officer then asked if he could "check [the car] out,", to which Mr. Thomas responded, "Yeah, go ahead." While the officer was preparing to search the vehicle, Defendant was cleaning the passenger side of the car and grabbing her pill bottles off the floor. The officer informed her to leave everything in the car. She apologized, stating she was just trying to clean it up for him because it was messy.

At some point, before the officer began his search of the car's interior, Defendant's wallet came to be on top of the vehicle. Neither the video of the encounter nor the testimony from the suppression hearing definitively establishes *how* Defendant's wallet came to be on top of Defendant's vehicle. The trial court, though, made a finding that it was Defendant who placed her wallet on top of the car at some point during the encounter. And Defendant in this present appeal does not challenge this finding. Therefore, for purposes of our review, the trial court's finding is binding. *See, e.g., Brackett v. Thomas*, 371 N.C. 121, 127 (2018) (holding unchallenged findings are binding on appeal). (We express no opinion as to whether this finding remains binding on Defendant on remand or in any subsequent appeal.)

In any event, at some point, the officer retrieved Defendant's wallet from the

top of the vehicle and searched inside of it, whereupon he discovered a bag of methamphetamine inside the wallet. It is unclear based on testimony and body camera footage when, by whom, and under what circumstances Defendant's wallet was placed on top of the car.

Defendant was only charged for the methamphetamine found in her wallet. Prior to her trial, she moved to suppress the evidence found in her wallet on the grounds that the evidence was found during an unconstitutional search.

The trial court entered an order denying Defendant's motion to suppress. The court determined that Defendant's companion, Mr. Thomas, had validly consented to the search of her vehicle, based on his "apparent control" of the vehicle, and that Defendant, otherwise, also implied consented to the search of her vehicle (presumably based on her actions and inactions). The trial court, however, made no findings or conclusions concerning whether consent was given to search the wallet itself.

Defendant pleaded guilty to possession of methamphetamine, reserving her right to appeal the trial court's denial of her motion to suppress. Defendant appealed.

## II. Analysis

We review a trial court's order denying a defendant's motion to suppress by "determining whether the trial court's underlying findings of fact are supported by competent evidence and whether those factual findings in turn support the trial court's ultimate conclusions of law." *State v. Parisi*, 372 N.C. 639, 649 (2019) (citations and internal quotations omitted). A trial court's findings of fact are

"conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Eason*, 336 N.C. 730, 745 (1994). "We will review conclusions of law de novo regardless of the label applied by the trial court." *State v. Jackson*, 220 N.C. App. 1, 8 (2012).

The relevant findings of facts and conclusions of law are as follows:

[Finding 5]: At each time Ms. Peters accessed the car she did so from the driver's side. The court concludes that Ms. Peter[s] had her belongings stored in the passenger area of the car and she did not access the driver's area as she had not been in control of its operations and contents in the driving area.

[Finding 7]: In the presence of both Mr. Thomas and Ms. Peters, [the officer], in requesting consent to search the car, asked "care if we check it out?" Mr. Thomas said "Yeah, go ahead." The Court finds from this evidence that Ms. Peters did not object and at no time voiced opposition to the search, or the impending search, thereafter.

[Finding 8]: As a result of the search [the officer] discovered methamphetamine inside a pink [wallet] which had been removed from the interior of the car by Ms. Peters who placed it on the roof of the car in view [of the officer] after he had received consent to search.

[Conclusion 1]: Mr. Thomas was in apparent control of the vehicle's operation and contents at the time the consent by him was given and had valid authority to consent to said search.

[Conclusion 2]: Ms. Peters did not object to Mr. Thomas'[s] authorization given to [the officer] to search the vehicle and impliedly consented to the same.

Consent of a search is analyzed by looking at the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). A person who is not the lawful owner of a vehicle may consent to the search of a vehicle. *See, e.g., N.C.G.S.* § 15A-222(2) (providing that one in apparent control of a vehicle may consent to its search).

Also, our Court has held that consent of an owner to search her vehicle may be inferred from her silence when consent is given by a third party who is in apparent control of the car. *See State v. Foster*, 33 N.C. App. 145, 148 (1977).

Here, we conclude there is evidence from which the trial court could find that Defendant impliedly consented to the search of her vehicle, aside from her failure to object when Mr. Thomas consented. Specifically, there was uncontradicted evidence that Defendant cleaned an area of the interior to facilitate the officer's search and that she responded, "okay," when the officer told her to "just leave everything in it." From this and other behavior, the officer reasonably believed that Defendant was consenting to the search that had been previously verbally given by Mr. Thomas, specifically, to search the vehicle.

Notwithstanding, the trial court failed to make any finding concerning whether Defendant consented to the search of her wallet outside the vehicle. That is, the trial court found that the officer "request[ed] consent to search the car," that consent was given "to search the vehicle," and that the methamphetamine was discovered "inside a pink [wallet] which had been removed from the interior of the car by [Defendant] who placed it on the roof of the car in view of [the officer] after he had received consent to search." The wallet was neither inside nor otherwise attached to the vehicle. *See, e.g., United States v. Clayton*, 2024 U.S. Dist. LEXIS 87639 (W.D. Tenn. 2024) (holding that the automobile exception did not authorize officers to search a plastic bag on top of the vehicle, reasoning that "[c]ontainers that can serve as a natural

extension of a vehicle possess the same potential mobility as does the car, but containers placed on a vehicle that are neither attached nor tethered do not").

Since the trial court made no determination concerning whether consent was validly given for the search of the wallet where the methamphetamine was found, the trial court's findings cannot support its order denying Defendant's motion to suppress. And such denial was necessarily prejudicial as the methamphetamine found in the wallet was the basis of the charge against Defendant.

We, however, must next consider whether the proper mandate is to vacate and remand for further findings or whether the proper mandate is to reverse the order denying Defendant's suppression motion. For the reasoning below, we believe the best course in this case is to vacate the trial court's order and subsequent judgment and remand the matter to the trial court for further findings.

In so considering the appropriate mandate, we are mindful that the burden rests *with the State* to show that consent to search a particular area was validly given. *See State v. Hardy*, 339 N.C. 207, 226 (1994). We are also mindful that the consent must be "clear and unequivocal" for the consent to be valid. *State v. Pearson*, 348 N.C. 272, 277 (1998).

Here, the trial court did find that the wallet "had been removed from the interior of the car by [Defendant] who placed it on the roof of the car in view of [the officer] after he had received consent to search [the car]." There was evidence that she was in possession of the wallet earlier when she was providing her identification

and title information to the officer, that she went towards the car to clean it out to facilitate the officer's search of the car (after Mr. Thomas gave verbal consent to the search), and that she did not possess the wallet when she stepped away from the car as the officer began his search. However, there is no direct evidence in the record for this finding. Defendant, though, has not challenged the finding. Therefore, this finding is binding on appeal. *In re A.A.M.*, 379 N.C. 167, 176 (2021).

However, it is unclear why Defendant placed her wallet on the car. She may have left it there inadvertently while cleaning out her car and simply forgot that the wallet was there when the officer told her to stop cleaning. Or it may be that she placed the wallet on the car as a gesture of consent to the search since she carried other personal items away from the car prior to the search.

Further, Defendant's silence while the officer searched her wallet cannot constitute consent. Specifically, our Supreme Court has held that where a defendant has consented to the search of his vehicle, the officer's search of a defendant's *person* (and finding drugs on his person) based on a defendant's silence/acquiescence is unlawful:

> The superior court relied on the consent to search the vehicle . . . and the fact that [the defendant] did not object when he was [personally] searched to conclude the defendant consented to the search. This was error. The consent signed by the defendant applied only to the vehicle. We cannot broaden the consent to include the defendant's person. We also cannot hold that the acquiescence of the defendant when the officer told him he would frisk him was consent, considering all the circumstances. There must be

> clear and unequivocal consent before a defendant can waive his constitutional rights.

*Pearson*, 348 N.C. at 277. We have held, though, that nonverbal behavior by a defendant *may* constitute a sufficient expression of consent. *See State v. Harper*, 158 N.C. App. 595, 603 (2003).

The United States Supreme Court has held the test concerning the scope of consent to be "that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

On remand, the trial court may again deny Defendant's motion, but only if it makes findings based on the evidence that the officer objectively believed that Defendant was giving her clear and unequivocal consent to the officer's search of her wallet. Otherwise, it is the trial court's duty to grant Defendant's motion.

We express no opinion as to the appropriateness of the trial court's consideration of new evidence on remand, as neither party has briefed this issue.

VACATED AND REMANDED.

Judges WOOD and MURRY concur.